MINNIE HALLE ET AL., APPELLANTS, VS. JACOB R. EINSTEIN, APPELLEE.

1. The second section of Article XI of the Constitution of 1885, relating to married women's property, is self-executing, and constitutes the organic and paramount regulation on the subject of charging married women's separate property in equity for the payment of debts or obligations contracted by them in reference thereto.

2. Language found in the Constitution must be presumed to have been deliberately used for the purpose of accomplishing some object, and full meaning should be given to all the words used, if it is possible to do so.

3. Under the third paragraph of Section 2 of Article XI of the Constitution, a married woman's separate real or personal

statutory property may be charged in equity and sold, or the uses, rents and profits thereof sequestered, *for the price of any property purchased by her*, whether for material used with her knowledge or assent in the construction of buildings, or repairs, or improvements upon her property, or not.

4. When it does not appear whether the real property of a married woman is her equitable separate estate, or her separate statutory property, the court can not deal with it in so far as ordering its sale for the payment of a debt is concerned.

5. Where a bill is filed to subject a married woman's separate statutory property to the payment of a debt contracted by her on her sole credit, and the husband is not shown to be liable for the same in any manner, it is error to render a personal decree against the husband who is joined with his wife in the suit.

6. In the absence of any evidence to sustain a claim of homestead exemption under the Constitution and laws of this State, set up in an answer, the question of the right to such exemption will not be considered. Whether a married woman can under any circumstances avail herself of such right, not decided.

Appeal from the Circuit Court for Duval county.

### STATEMENT.

Einstein filed a bill in chancery against Minnie Halle and her husband, Philip Halle, to subject the statutory separate property of the wife to the payment of a debt alleged to have been contracted by her on the credit of her said estate. The debt sought to be collected out of the wife's separate statutory property consists of an open account for goods and merchandise, and it is alleged that the goods were sold to Minne Halle, and that she was at the time and has continued to the filing of the bill the wife of Philip Halle, and was then, and at the time of filing the bill, conducting in the city of Jacksonville the business of buying and selling goods of which she was the owner, her said husband managing and controlling said business as agent for her and in her name. That the firm of

Einstein & Lehman, composed of Jacob R. Einstein and Adolph Lehman (of which firm complainant Einstein was the successor and sole proprietor of the business and accounts) sold and delivered to said Minnie Halle the goods charged in the said account, amounting to $393.45, and that the prices charged for same were just and reasonable, and she promised to pay for the same; that said goods were sold to Minnie Halle upon her sole credit and to become her sole and separate property, and upon the sole credit of her separate estate herein described, and for the benefit thereof, and to her sole use and benefit for the purpose of replenishing her said stock of merchandise in the usual course of carrying on her business, and that the said goods sold to her became and were her separate property, and went into, enhanced and benefitted her said stock of goods; that said Minnie Halle was the owner of a large stock of goods used by her in her said business, and that a large part of said stock of goods is the same owned by her when she purchased the said goods from Einstein & Lehman, and that some of said stock was purchased with proceeds of sales therefrom and from goods sold to her by said Einstein & Lehman; that at the time Minnie Halle purchased said goods from Einstein & Lehman she was the owner of said mercantile business, and was then, and at the time of filing the bill, the owner in fee, as her separate statutory property, of the east thirty feet of lot six (6) block 7, and lot seven (7), of block 7, situated in the city of Jacksonville, Duval county, Florida; that said goods were sold and delivered to her upon the sole credit and for the benefit of her said separate statutory property, both real and personal, and having entered into and become a part of said stock of goods, the claim of complainant is a charge in equity upon all of

the separate property of said Minne Halle above described, and so much thereof as may be necessary to satisfy complainant's demand, with interest, costs and a reasonable solicitor's fee, should be sold under a decree of the court to pay said demand. It is also alleged that no part of the account had been paid, and that the account had been transferred and assigned to the complainant Einstein, the successor of the firm of Einstein and Lehman.

The special prayer of the bill is, that the demand found to be due complainant on an account be decreed to be a charge upon the said separate property, real and personal, described in the bill, and that so much thereof be sold under the direction of the court as will be necessary to pay complainant's claim, interest, costs of suit and solicitor's fees.

The answer of Philip and Minnie Halle admits that they were husband and wife, and that the latter was engaged in business in the city of Jacksonville, and was possessed of a stock of goods and merchandise which she employed in business, but it is denied that she was ever possessed of the real estate described in the bill. It is alleged that she was at the time of the institution of the suit seized and possessed of the east thirty feet of lot six (6) in Block 71, and the east half of lot seven (7) in Block 71, on the latter of which lots she lived with her family, consisting of her husband, Philip Halle, and three daughters, two of whom are minors, and entirely dependent upon her for a support; that since the institution of the suit she had conveyed the said east half of lot seven (7), Block 71, to Isador Grunthal for the sum of $3,500. It is admitted that she was indebted to Einstein & Lehman for goods purchased by her from them to the amount stated, but that she did not have more than $75 worth of said

goods at the time of filing her answer, and that she was ignorant of any transfer of said account, and called for strict proof of the same. They deny that the goods were sold to the wife on the faith of her real estate, or that Einstein & Lehman were aware of her ownership of the same prior to the purchase of said goods, or that the said goods were for the benefit of her separate real estate, or that it was ever benefitted thereby. It is further alleged that the husband Philip Halle was insolvent, and had no property, real or personal, except a few articles of household furniture of less value than $250, and that the wife Minnie provided for the support of the family out of her separate estate, and also provided her family with a home; and being the head of the family resident in this State, she is entitled to all the exemptions allowed under the laws of this State to heads of families and entitled to have such exemptions set apart to her by decree of the court; that the said lot on which the said Minnie Halle lived at the time of purchasing said goods, and at the time of commencing this suit, and from that time until she conveyed it to Grunthal, was exempt to her as the head of a family, and that she had a right to convey it free from any charge or lien upon the same by reason of the bill, and she asks that her purchaser be protected by decree of the court, and that she be protected in all her rights and exemptions as the head of a family; that if she be deemed not to be entitled to said exemptions, that then her said husband be allowed to claim the homestead and exemptions out of her separate estate, by virtue of his right to take and have the rents and profits of the same. The right to solicitor's fees is denied, and the benefit of demurrer is claimed to that phase of the bill. It is also denied

38

that the bill of complaint shows any right or equity where complainant's debt is asserted as a charge against the separate estate of the wife.

On final hearing it was decreed that respondents, Minnie Halle and Philip Halle, were indebted to complainant in the sum of $436.25, and that they pay the same within three days from date of the decree, and in default of payment, all the stock of goods, wares and merchandise in a store house kept by Minnie Halle at number 37 West Bay Street, in the city of Jacksonville, and the east thirty feet of lot six (6), in Block 71, and the east half of lot seven (7) in same block, situated in said city, be sold, or so much thereof as may be necessary to realize the amount due complainant and costs of the proceedings, and said property to be sold separately without material injury to the parties in interest. The sheriff was directed to make the sale, execute deeds to purchasers, disburse the funds and make report to the court of his doings in the premises.

Defendants appealed.

*R. H. Liggett*, for Appellants.

*F. W. Pope*, for Appellee.

MABRY, J.:

The first two assignments of error on the appeal in this case are, (1) "that the chancellor erred in rendering said decree for the reason that neither the pleadings nor the evidence show that the debt with which Minnie Halle's property is charged is the purchase price of said property, or that said debt was due upon any agreement in writing made by said defendant Minnie Halle for the benefit of her separate property,

or that said debt is the purchase price of property used with her knowledge and assent in the construction of buildings or for repairs and improvements upon her property;" and (2) "that the chancellor erred in rendering said decree, because the answer of the defendants denies that the debt was contracted upon the faith and credit of defendant's real estate, or for the benefit thereof, and there is no evidence to overcome the force of the answer." The testimony of appellee Einstein is to the effect that Einstein & Lehman sold the goods charged in the account filed with the bill to Minnie Halle, who was conducting a mercantile business in her own name in the city of Jacksonville, and at the time the goods were sold it was known to Einstein & Lehman that Philip Halle, the husband of Minnie Halle, was insolvent, and that she was conducting the business as her own, and the goods were sold upon her credit alone; that at the time the goods were sold, Minnie Halle owned the store and some real estate situated in the city of Jacksonville, the description of which was not known to witness, and it was upon his knowledge of her possession of said property and her credit solely that the goods were sold to her. Other goods had been sold to her by Einstein & Lehman, and had been paid for by her. That witness assumed her liability for the goods because she was in possession of the property, and the sale was made to her on her sole credit. Witness was sole owner of the account, it having been assigned to him. The testimony of J. B. Hess was that M. Halle was in the clothig business on Bay Street—P. Halle conducting the business. Who M. Halle was intended for, witness could not say. Appellants introduced no testimony.

The second section of Article XI of the Constitution of 1885, provides that "a married woman's separate

real or personal property may be charged in equity and sold, or the uses, rents and profits thereof sequestrated for the purchase money thereof; or for money or things due upon any agreement made by her in writing for the benefit of her separate property; or for the price of any property purchased by her, or for labor and material used with her knowledge or assent in the construction of buildings, or repairs, or improvements upon her property, or for agricultural or other labor bestowed thereon, with her knowledge and consent." The first section of the article referred to is the same as the one on the subject in the former Constitution, with the added words, "without her consent given by some instrument in writing, executed according to the law respecting conveyances by married women." Before considering the assignments of error a reference to the condition of the law in this State on the subject of charging a married woman's separate property in equity at the time of the adoption of the Constitution of 1885, will not be out of place.

In the case of Dollner, Potter & Co. vs. Snow, 16 Fla., 86, a liability was sought to be imposed by personal judgment in an action at law against married women on a note executed for the purchase money of real estate bought by them. The distinction between a married woman's equitable separate estate, and her statutory separate property was pointed out, and it was held that neither the Constitution of 1868, nor the statute of 1845, enabled her to bind her person, either at law or in equity, by contract, or to authorize a suit against her at law. It was also held that neither the Constitution nor the statute prohibited the wife from acquiring, since their enactment, such a separate estate as was recognized and known before their existence, and that no restriction was imposed by them on the

right of the wife to become the beneficial subject of a settlement or grant with such restrictions, powers and trusts, conformable to law, as the grantor might deem proper. In Fairchild vs. Knight, 18 Fla., 771, it was held that the feature of the statute of 1845 in reference to filing an inventory of the married woman's property, and in the absence thereof making it liable to the debts of the husband, was repealed by the Constitution of 1868, but in other respects the statute continued in full force under the Constitution. In Blumer vs. Pollak, 18 Fla., 707, it was decided that where a married woman carries on business in her own name, having property employed in such business, and purchases goods upon her sole credit for the purpose of such business, her separate property may be charged in equity for money due for the goods purchased. The view expressed in the case of Yale vs. Dederer, several times before the New York courts, is quoted with approval. In that decision it is said: "If we desire precision and certainty in this branch of the law, we must recur to the foundation of the power of a *feme covert* to charge her separate estate, and this has heretofore arisen solely from her incidental power to dispose of that estate. Starting from this point it is plain that no debt can be a charge which is not connected by agreement, either express or implied, with the estate. If contracted for the direct benefit of the estate itself, it would of course be a lien, upon a well founded presumption that the parties so intended, and in analogy to the doctrine of equitable lien for purchase money. But no other kind of debt can, as it seems to me, be thus charged without some affirmative act of the wife evincing that intention." In Staley vs. Hamilton, 19 Fla., 275, it appeared that a wife, together with her husband, executed a note for money

borrowed for the husband, and a mortgage was exe-cuted on the wife's separate real property to secure it, but not properly acknowledged by her. The wife's property was sought to be charged with the amount of the note on the ground that the money was loaned solely on the credit of the wife and her separate prop-erty. It did not appear that the money was loaned for or went to benefit the wife's separate property, and it was held that the bill could not be maintained. This case holds that a charge upon a married woman's sep-arate property may arise in equity, where it must be necessarily inferred from the fact that the debt is con-tracted for the benefit of her property or estate, in analogy to the doctrine of equitable lien for purchase money, that she intended the payment to be made out of her own property, or where, living separate from her husband, the debt is contracted by her for her own personal benefit. It is said in argument in this case, after stating the English equity rule in regard to the wife's separate estate: "But the rule prevailing in this country in regard to the separate statutory property of married women is different from the equity rule in re-spect to a married woman's separate estate which is properly an equitable estate, and not her legal property —an estate vested in a trustee for her benefit, over the body of which she has no legal power of alienation, ex-cept such as might be given by the terms of the grant or settlement creating it." In Harwood vs. Root, 20 Fla., 940, the bill alleged that furniture was sold to the wife with the approval and consent of her husband to be used in her home. Upon delivery of the furniture to the wife, a note was given for its price by the husband and wife, and she was seized and possessed of certain described real estate which, according to the convey-ances to the wife attached as exhibits to the bill, con-

stituted her separate statutory property. The husband
was alleged to be insolvent, and that credit for the
furniture was given to the wife by reason of her own-
ership of said separate property, and that the wife and
her family used and enjoyed the furniture purchased.
It was held on demurrer that the bill stated a proper
case to authorize the subjection of the wife's separate
statutory property to the payment of the price of the
furniture. Here it was said that the rule on the subject
of charging a married woman's separate property is,
"that she is capable of charging such estate in equity
the same as though it were held by a trustee with like
limitations as to management and control as to those
contained in the Constitution and the statutes control-
ling the subject;" and that "a wife may charge in equity
her separate estate under circumstances in which a
court of law would deem her personally bound by
contract if she were sole. This is the substitute which
courts of equity have devised in place of the legal
power to contract; that is, when a court of equity makes
a married woman a *feme sole* as to her separate estate,
it, instead of authorizing her to bind her person by con-
tract, authorizes her to charge the estate in like manner
as she would bind her person if she were unmarried.
*The authority to charge the estate, therefore, is not an
equitable substitute for the authority of a person in
her own right to convey, but a substitute for the au-
thority to contract.*" It was also said: "The rule
prevailing in a court of equity, however, in a case such
as this, is to sequester the rents and profits of the
property, rather than to sell the *corpus*, or body, of
the estate." The subsequent cases of Schnabel vs.
Betts, 23 Fla., 177, 1 South. Rep., 692; O'Neil vs. Per-
cival, 25 Fla., 118, 5 South. Rep., 809, and Garvan vs.
Watkins, 29 Fla., 151, 10 South. Rep., 818, announce

and apply the rule that a married woman can charge
her separate statutory property in equity for any debt
incurred by her for the benefit and improvement of
said property. It was held in Garvin vs. Watkins,
*supra*, that the court of chancery had the power to
sell the corpus of the wife's separate statutory prop-
erty, but this decision, though arising under the Con-
stitution of 1868, was not rendered until after the
adoption of the Constitution of 1885. It may be
stated, as a result of the decision referred to, that a
married woman could charge her separate statutory
property for any debt contracted by her for the benefit
or improvement of such property, and the power to
bind her equitable separate estate depended upon the
restrictions, powers and trusts contained in the instru-
ment creating the estate. The debt contracted, in
order to be enforceable against the wife's separate
statutory property, must directly or impliedly relate
to such property, but if she made a contract for goods
to be added to her other property, or for the benefit
and improvement of any part of her separate property,
her entire statutory property could be charged in
equity for the debt.

It is contended for appellants, in the first place, that
whatever may have been the rule in this State on the
subject of charging a married woman's separate prop-
erty in equity for her debts prior to the adoption of
the Constitution of 1885, since that time the right to
proceed in that court to subject her property for debt
is controlled by that instrument; and, in the second
place, conceding that under the constitution a married
woman's separate property, both real and personal,
may be charged in equity for the purchase money
thereof, or that her said property may likewise be
charged for money or thing due upon any agreement

in writing made by her for the benefit of such property, it is contended that beyond that her separate property, real or personal, will not be chargeable with the price of property purchased by her unless it is for the construction of buildings, or repairs, or improvements upon her property. The provision in reference to charging a married woman's separate property 'for the price of any property purchased by her' and found in the third clause of the second section of the article referred to, is qualified, it is insisted, by the terms in the same clause, "in the construction of buildings, or repairs, or improvements upon her property." The conclusion of counsel, from the premises stated, is that a married woman can not bind her separate property generally for goods purchased by her to be added to her other personal property, unless she does so in writing as provided in the second clause of said article; and, further, in the absence of an agreement in writing for that purpose, her separate real property would not be bound for the purchase price of personal property in no way connected with the realty. This view, it is claimed, is enforced by the punctuation of the entire section, it being divided into three clauses by semi-colons, and the words of the last clause being divided only by commas. The construction of the clause contended for is, that a married woman's separate property, real and personal, may be charged in equity for the price of any property purchased by her in the construction of buildings, or repairs, or improvements thereon, and that her said property may likewise be charged for labor and material used with her knowledge or assent in the construction of buildings, or repairs, or improvements upon her property, or that her said property may likewise be charged for agricultural or other labor bestowed thereon with her

knowledge and consent. And it is claimed that unless said clause be so construed, it will be irreconcilable with the second clause, and render the first one entirely superfluous. We can not subscribe to the construction contended for by counsel. The second section of the article mentioned, in our judgment, regulates the right to subject, in equity, a married woman's separate real and personal property to the payment of debts or obligations contracted by her in reference thereto. The third section provides that the Legislature shall enact such laws as may be necessary to enforce the provisions of this article, but it is self-executing sufficient to constitute a complete regulation of the subject, and legislation is not indispensable to its enforcement. The manifest purpose of the convention was to provide for and regulate in the organic law not only the right of married women to acquire and hold property, as had been done before, but also the extent to which their separate property may be subjected in equity to the payment of debts or obligations contracted by them in reference to it, as well as the liability of their said property to be taken in payment of the debts of their husbands. This being the manifest purpose of the convention in the article mentioned it must be regarded as the paramount regulation on the subject and as furnishing the controlling law in reference to subjecting married women's separate property to the payment of debts or obligations contracted by them in reference thereto. Cooley's Const. Lim. page 74 (5th ed.); Bartlet vs. King, 12 Mass., 536; Tong vs. Marvin, 15 Mich., 60; Heckmann vs. Pinkney, 81 N. Y., 211. We discover no irreconcilable conflict between the second and third clauses in said article. We can conceive of an obligation for money or thing due upon an agreement by a married woman for the ben-

efit of her separate property that would not be included in a demand for the price of property purchased by her, or for labor and material used with her knowledge or assent in the construction of buildings, or repairs, or improvements upon her property, or for agricultural or other labor bestowed thereon. Where the demand is for labor and material used with her knowledge or assent in the construction of buildings, or repairs, or improvements upon her property, or for agricultural or other labor bestowed thereon, no agreement in writing is necessary to charge her separate statutory property, nor is any written agreement to that effect necessary to charge her separate statutory property for the price of any property purchased by her in conformity to law regulating the purchase. Any demand for money or thing due upon an agreement for the benefit of her separate statutory property not included in the demands mentioned would have to be in writing; otherwise it could not be enforced. The first clause provides that a married woman's separate real or personal property, that is, any such property owned by her at the time, may be charged in equity and sold, or the uses, rents and profits sequestered for the purchase money thereof. The equitable remedy for the enforcement of liens for purchase money applied only to real property, but under this clause the purchase money for both real and personal property of the married woman can be charged upon the property itself. Whether the equitable rule mentioned has been changed by the homestead article in the Constitution, it is not necessary to say, but the clause we are now considering does unquestionably render both real and personal property in the hands of the wife liable for purchase money as stated. The third clause can operate further and make the separate real and personal

property of the wife liable for the purchase price of any property bought by her, whether then in her possession or not. We must give full meaning to all the words of the Constitution, if it is possible to do so, as it must be presumed that they were deliberately used for the purpose of accomplishing some object. Considering the entire section, we think it must be construed to mean that the married woman's separate real or personal property may be charged in equity and sold, or the uses, rents and profits thereof sequestered for the price of any property purchased by her. The purchase of any property by her augments that much, of course, her separate property, and inasmuch as she is given the right to acquire property by gift, devise, bequest, descent, or purchase, free from the debts of her husband, a corresponding liability is imposed upon her separate property for the payment of the price of any property purchased by her. This seems to us to be the intention of the convention, and hence the only proper construction to be placed upon the article in question, and to this extent it is only necessary to go here to dispose of the case before us.

The bill, as an entirety, sufficiently alleges that the wife, Minne Halle, was possessed of personal and real statutory property. The averments in the first part of the bill as to the character of the personal property are not distinct, but it does appear in connection with the allegation as to the real estate that both were her separate statutory property. The admissions in the pleadings and proof show, we think, that Mrs. Halle was possessed of separate statutory personal property in the city of Jacksonville, and that she owed for the goods specified in the account attached to the bill. She conducted a mercantile business in her own name, bought goods and paid for them, and,

as it appears, was the sole owner of the same in her own right. As to the real estate the proof is different. The bill alleges that she was seized and possessed of two designated lots in the city of Jacksonville as her separate statutory property, but the answer denies that she ever owned such property, and there is no proof that she did. The answer alleges that she was seized and possessed of two other lots in Jacksonville, and this is all the proof there is as to the character of her tenure as to these lots. The court decreed that both the personal and real estate be sold to pay the demand of the complainant, and, according to the decision in Crawford & Co. vs. Gamble, 22 Fla., 487, the decree was erroneous so far as the real estate was concerned, if it be admitted that the admission in the answer of such property be sufficient upon which to base a decree. It does not appear whether the real estate was her equitable separate estate, or her separate statutory property, and the court could not properly deal with it without proof as to the character of the property or estate.

There is still another error in the decree rendered. It was adjudged that Philip Halle pay the sum of $436.25. There is nothing in the pleadings or proof to show any liability on his part to pay for the goods. It is distinctly alleged and shown that the goods were sold to Mrs. Halle on her sole credit, and not on the credit of her husband, and there is no showing that he ever in any way promised to pay for the goods.

There is a further contention here that the decree was erroneous because Mrs. Halle was the head of a family and entitled to a homestead exemption out of the real estate. This claim of exemption was set up in the answer, but it vanishes entirely in view of the fact that there is not a particle of evidence upon which to base

any claim of homestead exemption, if, in fact, she was entitled to avail herself of the same. None of the allegations in the answer as to occupancy of the real estate by her and her family are sustained, or offered to be sustained by any proof. Without intimating whether she could take the benefit of a homestead exemption, we refrain from a consideration of the question in the absence of any proof showing that an exemption could be allowed in any case. Post vs. Bird, 28 Fla., 1, 9 South Rep., 888.

What we have said is sufficient to dispose of the assignments of error made. The decree, in so far as it orders a sale of the real estate therein mentioned and directs a personal liability against the husband, Philip Halle, is erroneous for the reasons assigned, but was proper to the extent of ordering a sale of the separate statutory personal property of the wife, Minnie Halle, to pay the claim of appellee and costs of suit; and as it is within the power of this court to modify here a decree in chancery by eliminating errors therefrom (Garvin vs. Watkins, *supra*), an order will be entered modifying the decree appealed from so as to include a sale only of the said personal property therein described to pay the amount decreed in favor of appellee and costs of suit.

Order to be entered accordingly.