THE FIRST NATIONAL BANK OF PENSACOLA *et al., Appellants,* v. DORA HIRSCHKOWITZ *et al., Appellees.*

1. At common law, the promissory note of a married woman is void. The constitution and statutes of this State make no change in this respect, unless said married woman shall have been made a free dealer. Neither at law nor in equity can she bind herself so as to authorize a personal judgment against her.

2. Where a married woman carried on business in her own name, having property employed in such business, and purchases goods upon her sole credit for the purpose of such business, her separate property may be subjected in equity to the payment of claims for money due for such purposes.

3. Merchandise purchased by a married woman who is conducting a mercantile business in her own name is her separate statutory property.

4. A suit in equity brought by a creditor against a married woman for the purpose of subjecting her separate statutory property to payment of claims for money used by said married woman in purchasing goods for the conducting of a mercantile business in her own name is not an ordinary creditor's bill nor a bill analogous thereto. It is *sui generis,* being a suit in equity, on the same plane as a suit at law against a person *sui juris.* The bill in such case is the bringing of a suit, and the appointment of a receiver, by which the property of said married woman is taken into the custody of the court, is an equitable attachment, and creates a lien upon the property so taken in charge in favor of the creditor procuring the receiver, just as a levy of an execution or attachment at law would do.

5. The filing of a bill by a creditor against a married woman for the purpose of subjecting her separate statutory property to the payment of her debts and the appointment of a receiver, by whom the possession of the property of said married woman is taken, gives such creditor a prior lien over other creditors who

VOL. 46, JUNE TERM, 1903.          589

Ft. N. Bk. Pensacola et al. v. Hirschkowitz et al.—Statement of Case.

may have "loitered by the way," and entitles such creditor to a first lien upon the funds in the hands of the receiver, provided said suit is successfully prosecuted to final decree, the decree taking effect, by relation, from the appointment of such receiver.

This case was decided by Division A.

Appeal from the Circuit Court for Escambia county.

## Statement.

The First National Bank of Pensacola, a corporation, one of the appellants, filed its bill in equity in the Circuit Court of Escambia county on the 9th day of June, 1898, against Dora Hirschkowitz and Joseph Hirschkowitz, two of the appellees, alleging in substance therein as follows: That complainant was a corporation doing business in the city of Pensacola, Florida; that the defendant Dora Hirschkowitz was the wife of the defendant, Joseph Hirschkowitz, both of said defendants residing in the said city of Pensacola, where the said Dora Hirschkowitz had been conducting a merchandise business for a period of more than three years in the name of D. Hirschkowitz in which she bought and retailed clothing, dry goods and other enumerated articles, and that said defendant was still engaged in said business at the date of the filing of said bill; that the said Dora Hirschkowitz had been the owner of all the merchandise bought and sold in carrying on said business, the same being her separate statutory estate, and purchased and held with her own separate statutory funds; that in conducting said business it became necessary from time to time for said defendant to incur indebtedness for the purpose of buying goods for maintaining, and at times increasing, the stock of merchandise, and that from time to time said defendant had borrowed from complainant various sums of money for said use; that for the purposes aforesaid, during the three or four months immediately preceding the filing of the bill, said defendant had borrowed from complainant various

sums of money and that of said sums the following amounts falling due at the following dates remained unpaid, to-wit: $500.00 on June 1, 1898, $250.00 on June 1, 1898, $300.00 on June 3, 1898, $250.00 on June 1, 1898, $103.07 on June 4, 1898, all of which said sums of money had been actually used in the purchase of goods for said stock of merchandise and in the conduct of the said business; that the said debts were evidenced by the promissory notes of said defendant, payable at the times and in the sums above mentioned, said notes containing a stipulation that in the event the amounts mentioned therein should have to be collected by suit said defendant should pay an attorney's fee of ten per cent.; that said defendant still continued to conduct said business and was daily selling the goods accumulated therein, while the said stock had not been replenished by the acquisition of new goods for more than two months prior to the date of the filing of the bill, and while the said stock of goods was then in excess of the amount necessary to satisfy said defendant's indebtedness to complainant, yet if said defendant continued to deplete the same by daily sales it would not suffice to pay said indebtedness and complainant would have no recourse for the satisfaction of its debt; that said stock of merchandise consisted of goods which would rapidly deteriorate and that the same must be sold at an early date if anything like the value thereof was to be realized at said sale, and that if the said goods should remain unsold until a final decree could be obtained in this cause, the amount which would be realized from the sale thereof, after deducting the expenses of retention and sale of said goods, would not be sufficient to pay the indebtedness of complainant. Said bill contained a prayer that the court would ascertain the amount of money due from said defendant to complainant, together with attorney's fees, and would decree that the amount so found to be due should constitute a first lien or charge upon the said property of said defendant, and that said property should be sold for the satisfaction of the said lien or charge and the amount found

to be due the complainant should be paid to it, and that for the preservation of said property and realization therefrom of the largest amount possible there should be appointed a receiver to whom should be delivered the possession of the property and who should be instructed to sell the same at public or private sale, as might be for the best interest of all concerned.  Said bill also contained the general prayer and the usual prayer for process, and had an affidavit appended thereto from J. S. Leonard, the cashier of complainant.

On the same day Carpeles Company, a corporation, the other appellant, filed its bill of complaint against said defendants, in substance the same as that filed by the First National Bank of Pensacola, save that it claimed a charge or lien upon the property of the said Dora Hirschkowitz for the sum of $80.00.

On the 9th day of June, 1898, subpœnas in chancery issued in said two suits, returnable on the 4th day of July, 1898, and each of said subpœnas was duly served upon said defendants on the said 9th day of June, 1898.

On the 8th day of June, 1898, the court below made an order appointing a receiver, directing him therein to take possession of said stock of merchandise and proceed to sell the same to the best advantage of all parties concerned. The receiver duly filed the bond required in said order and on a subsequent day in July, 1898, filed a report showing therein the sale of all of stock of merchandise for the sum of $1828.97, the expenses, exclusive of any compensation to the receiver for his services or fees for his attorney, being $280.48, leaving a balance in receiver's hands of $1548.49.

On the 27th day of June, 1898, S. E. Worms & Co., who are appellees here, filed a petition of intervention, and on divers other days other intervenors, all of whom are appellees here, filed their petitions of intervention, all of said petitions being the same in substance, differing only as to the respective amounts claimed.  Said intervenors expressed a willingness to contribute to the expenses of the suits already brought by appellants, upon their being made parties thereto

592     SUPREME COURT OF FLORIDA,

Ft. N. Bk. Pensacola et al. v. Hirschkowitz et al.—Statement of Case.

and claimed liens of equal dignity with those of appellants, and prayed that they might be "entitled to the benefit of any decree which may be rendered in said suits equally and share alike with the complainants."

On the 13th day of August, 1898, the court below made an order permitting the intervention of the said S. E. Worms & Co. to be filed and making said petitioner a party complainant, and on divers other days the court below made like orders permitting the interventions of the other petitioners to be filed and also making them parties complainant, the orders so made by said court reciting therein that appellants did not object to the said intervenors being made parties, if the court should be of opinion and decide that petitioners were entitled to relief in any form in this case, but that appellants reserved to themselves all right of objection to such opinion and decision of the court and of objecting to all other relief as prayed for in said petitions.

Subpœnas in chancery were issued at the instance of said intervenors on the 8th day of August, 1898, and were duly served upon said defendants on the same day.

On the first day of August, 1898, decrees *pro confesso* were duly entered against said defendants in the suits of appellants.

On the 3rd day of October, 1898, decrees *pro confesso* were duly entered against said defendants in favor of all the intervenors.

On the 5th day of December, 1898, appellants filed general demurrers to all the petitions of the intervenors, contending therein that said petitions did not show any ground for the relief therein prayed as against appellants.

On the 30th day of July, 1900, the court below made an order overruling all of said demurrers and allowing appellants until the first Monday in September, 1900, in which to take such further action as they might be advised.

Appellants declined to plead further, and on the 7th day of September, 1900, the court below rendered a final decree in said cause, in which the compensation of the receiver was

VOL. 46, JUNE TERM, 1903.            · 593

Ft. Nt. Bk. Pensacola et al. v. Hirschkowitz et al.—Opinion of Court.

fixed at $100.00 for his services, and for attorney's fee the sum of $40.00, and that after the payment of said amounts the remainder in the hands of the receiver not being sufficient to pay the claims of all the creditors, including appellants and intervenors, in full, the same should be pro-rated in accordance with the respective amounts of said claims, which are ascertained and fixed in said decree, the intervenors being held to stand on an equal footing with appellants and entitled to equal liens upon said fund. The amount to be paid to the First National Bank of Pensacola was fixed at $322.29, and the amount to Carpeles Company at $17.97.

From this decree appellants have entered an appeal to this court, and have assigned the following errors:

(1)  Each and every of the orders of the court over-ruling the demurrers to each and every of the petitions and interventions.

(2)  The failure of the court in the final decree to · award all the money (less costs and expenses) in the hands of the receiver to the appellants.

(3)  The order of the court in the final decree pro-rating the said amount in the hands of the receiver among the complainants and intervenors.

*Blount & Blount* for appellants.

No appearance for appellees.  .

SHACKLEFORD, J. (*after stating the facts.*)—It seems advisable to discuss all these errors together, since they all present for consideration the same question, whether the filing of a bill by one complainant against a married woman and the appointing of a receiver under such bill, by which the property of said married woman is taken into the hands of the court, gives such complainant a prior lien upon the assets over all other creditors who may subsequently seek to subject such assets, or whether all creditors have such

594  SUPREME COURT OF FLORIDA,

Ft. Nt. Bk. Pensacola et al. v. Hirschkowitz et al.—Opinion of Court.

an interest in the assets that no creditor can acquire a preference therein by priority in bringing suit.

We regret that counsel for the appellees have failed to file a brief in this court. See *Chamberlin v. Lesley,* 39 Fla. 452, 22 South. Rep. 736. However, we have been materially aided in our investigations and in reaching a conclusion by the very full and able brief of the counsel for appellants.

In an unbroken line of decisions, beginning with *Lewis v. Yale,* 4 Fla. 418, down to the present time, this court has held that "a *femme covert* is not competent to enter into contracts so as to give a personal remedy against her." As was said in *Dollner, Potter & Co. v. Snow,* 16 Fla. 86, "at common law, the promissory note of a married woman is void. The constitution and statute of this State make no change in this respect. Neither at law nor in equity can she bind herself so as to authorize a personal judgment against her."

Under the rule laid down in these decisions appellants could not have proceeded at law against the said married woman, Dora Hirschkowitz, and hence could not have reduced their claims to judgment. Also see *Crawford v. Feder,* 34 Fla. 397, 16 South. Rep. 287.

It is also the settled law of this State that "where a married woman carries on business in her own name, having property employed in such business, and purchases goods upon her sole credit for the purpose of such business, her separate property ·may be subjected in equity to the payment of claims for money due for such purchases." *Blumer v. Pollak,* 18 Fla. 707. Also see *Staley v. Hamilton,* 19 Fla. 275; *Garvin v. Watkins,* 29 Fla. 151, 10 South. Rep. 818; *Halle v. Einstein,* 34 Fla. 589, 16 South. Rep. 554. In *Crawford v. Gamble,* 22 Fla. 487, it was held that "merchandise purchased by a married woman who is conducting a mercantile business in her own name is her separate statutory property."

It follows that appellants had the right to file a bill in equity to subject the separate statutory property of the said

Dora Hirschkowitz to sale for the satisfaction of their claims. Section 2, art. XI, constitution of 1885. In fact, no other course was left open to them. . Thus far the law is clear. However, it still remains to be settled what right or advantage, if any, appellants acquired over the other creditors by pursuing this course. Did they by the filing of their bills and the appointment of a receiver, by which the property of said married woman was taken into the custody of the court, acquire a prior lien upon said property?

It seems to have been contended by the counsel for the intervening creditors that the bills filed by appellants were creditors' bills, or analogous to such bills, that in such bills the rule that equality is equity prevails and requires that the funds brought into court by the bills shall be prorated among all the defendants' creditors who may come in; also that while in such cases an individual creditor may acquire a preference by the filing of a bill, yet he can only obtain such preference after he has reduced his claim to judgment. We can not assent to this. We are of the opinion that the bills filed by appellants were neither creditor's bills, nor bills analogous to creditor's bills, but rather equitable actions seeking to recover debts against the separate statutory property of a married woman. See *Johnson v. Gallagher,* 3 De G. F. & J. 494, at 519, where the following language is used: "When a man contracts a debt, both his person and his property are by law liable to the payment of it. A court of equity, having created the separate estate, has enabled married women to contract debts in respect of it. Her person can not be made liable either at law or in equity, but in equity her property may. This court, therefore, as I conceive, gives execution against the property just as a court of law gives execution against the property of other debtors." Also see *Hulme v. Tenant,* 1 Brown's Ch. 16, at 21, where the Lord Chancellor uses the following language: "I have no doubt about the principle, that, if a court of equity says a *femme covert* may have a separate estate, the court will bind her to the whole extent, as to

making that estate liable to her own engagements; as for instance, for payment of debts, etc." As is well said by counsel for appellants, "none of the conditions which exist in case of a creditor's bill need exist. It is *sui generis,* being a suit in equity, on the same plane as a suit at law against a person *sui juris.* The bill in such case is the bringing of a suit, and the appointment of a receiver is an equitable attachment, and devotes the property taken in charge to the payment of the creditor's claim, just as a levy of an execution or attachment at law would do."

To hold that the bills filed by the appellants were ordinary creditor's bills, or bills analogous thereto and governed by the same rules, would be equivalent to denying appellants any remedy. They could not reduce their claims to judgment prior to the filing of their bills for the reason that the defendent debtor was a married woman, and, for a like reason they could not proceed by attachment and thereby acquire a priority. Being forced to go into equity to obtain any relief, why should they not be held by their vigilance, being first in point of time, to have acquired a first lien upon the goods of the defendant debtor? But for the fact that she was a married woman they could have proceeded at law by attachment and thereby acquired a first lien. *Stockton v. The National Bank of Jacksonville,* 45 Fla. 590, 34 South. Rep. —. Why should the rule be different in equity? Why does not the maxim, *qui prior est temore potior est jure,* apply?

It will be observed that appellants did not sue in behalf of all the creditors of the debtor or of such as might come in and contribute to the expenses of the litigation. As was said in *Sage v. Memphis & L. R. R. Co.,* 125 U. S. 361, 8 Sup. Ct. Rep. 887, at 376, "he was not bound to pursue that course. It was his privilege, under the law to sue for his own benefit, and it was within the power of the court, for his protection as a judgment creditor, to place the property of the debtor company in the hands of a receiver, for administration under its orders." Since no judgment could

VOL. 46, JUNE TERM, 1903.            597

Ft. Nt. Bk. Pensacola et al. v. Hirschkowitz et al.—Opinion of Court.

have been first obtained in this case by appellants, as we have seen, we know of no reason why the above quoted language is not applicable to this case.

The case of *Kelly v. Turner,* 74 Ala. 513, seems to be directly in point. On page 523 the following language is used: "The creditor of a married woman, resorting to a court of equity to charge her equitable separate estate, must, of necessity, in the bill describe the property which it is sought to subject. *Ravisies v. Stoddard,* 32 Ala. 599. It is upon this property only the decree can operate; for the contract is not of personal obligation, and a decree affecting or binding personally the married woman can not be rendered. In this respect the suit has some of the characteristics of a proceeding *in rem;* though in form and essential elements, it is a suit *inter partes.* A *lis pendens* is created by the institution of the suit, operative against all persons coming in subsequently, by purchase or otherwise. It creates a specific lien, if successfully prosecuted to final decree, the decree taking effect, by relation, from the day of the service of the summons to answer. The vigilance of the creditor first instituting suit, and prosecuting it with diligence, entitles him to priority, of which other creditors, less vigilant, who have 'loitered on the way,' have no just reason to complain."

To the same effect is *Hines v. Duncan,* 79 Ala. 112. Also see *Brooks v. Gibson,* 7 Lea, 271; *Mathews v. Mobile Mut. Ins. Co.,* 75 Ala. 85; 5 A. & E. Ency. of Pl. & Pr. 605-609; *Tilford v. Burnham,* 7 Dana, 109; *Corning v. White,* 2 Paige, 567; *Freedman's Sav. & Trust Co. v. Earle,* 110 U. S. 710, 4 Sup. Ct. Rep. 226. Also see *Parego v. Bonesteel,* 5 Biss. 66, S. C. Fed. Cas. No. 10,976, where the following language is used: "After the appointment of a receiver under a creditor's bill another creditor can acquire no rights by levying an attachment upon property of the judgment creditor. Where the court has obtained jurisdiction under a creditor's bill it will protect the creditor in following up his rights." The following authorities will also

prove instructive upon this point: *First National Bank of Sioux City v. Gage,* 93 Ill. 172, 175; *Albany City Bank v. Schermerhorn,* Clark's Chan. Rep. 297; *Davenport v. Kelly,* 42 N. Y. 193; *Lansing v. Easton,* 7 Paige, 365; 20 Am. & Eng. Ency. of Law, 128. While, as we have already said, we are of the opinion that the bills filed by appellants were neither creditor's bills nor bills analogous thereto, we know of no reason why the principle enunciated in some of the foregoing authorities in treating of creditor's bill should not apply here; that is, that the filing of a bill by a creditor and the appointment of a receiver, by whom the possession of the property is taken, gives such creditor a prior lien over other creditors. In the light of the authorities we must hold that appellants were entitled to a first lien upon the funds in the hands of the receiver. It follows, therefore, that all the errors are well assigned and that the decree must be reversed, with directions to sustain the demurrers of appellants to the petitions of the intervening creditors, and for such further proceedings as may be in consonance with equity practice and not inconsistent with this opinion; the appellees to pay the costs of this appeal.