EMMA KING AND HOUSTON KING, HER HUSBAND, *Appellants*, v. J. J. HOOTON AND JAMES C. WATSON, COPARTNERS AS HOOTON & WATSON, *Appellees.*

1. In order to warrant a court of equity in enforcing a claim against a married woman's separate property and subjecting the same to sale, under the provisions of Section 2 of Article II of the Constitution of Florida of 1885, the bill must distinctly and clearly allege that such married woman had made an agreement in writing for the benefit of her separate property, though it is not required that her husband should unite or join in such agreement.

2. Where a bill is filed in equity by a real estate broker against a married woman and her husband, under the provisions of Section 2 of Article II of the Constitution of Florida of 1885, to enforce his claim against the separate property of such married woman for his commissions in procuring a purchaser for such property, it is not sufficient simply to allege that such married woman made an agreement in writing authorizing such broker to sell such property for a certain fixed price, but the bill must further allege that such agreement was made for the benefit of her separate property.  Where no such allegation is contained in the bill and it cannot be reasonably inferred from the allegations contained therein and from such agreement in writing, which is attached thereto and made a part thereof, that a sale

of such property for such price would be for the benefit of such married woman's separate estate, and it is further alleged therein that she and her husband refused and failed to perform such written agreement, such bill is demurrable, as such allegations are not sufficient to sustain a decree to charge and sell the separate property of a married woman for the payment of such claim.

This case was decided by Division A.

Appeal from the Circuit Court for Escambia County.

The facts of the case are stated in the opinion of the court.

*Maxwell & Reeves,* for appellants.

*Blount & Blount & Carter,* for appellees.

SHACKLEFORD, C. J.—In the month of February, 1906, the appellees filed their bill in chancery in the Circuit Court for Escambia county, against the appellants, who interposed a demurrer to the bill, which was overruled, and the appellants then filed their answer. Shortly thereafter, by leave of the court, the appellees amended their bill, which amended bill is as follows:

"The bill of J. J. Hooton and Jas. C. Watson, co-partners as Hooton & Watson, both of Pensacola, Florida, against Emma King and Houston King, her husband, also of Pensacola, Florida, alleges as follows: That the defendants are both over the age of twenty-one (21) years and reside in the city of Pensacola, Florida; that the complainants are also over the age of twenty-one (21) years and reside in the city of Pensacola, Florida, and are real estate agents, engaged in the buying and

selling of real estate in the State of Florida, for themselves and others; that the defendant, Emma King, is a married woman and is seized and possessed in her own right, as of her separate statutory estate of Lots Eleven (11) to Seventeen (17), inclusive, and Twenty-three (23) and Twenty-four (24), and the East sixty (60) feet of Lots One (1) to Four (4), inclusive, and all of Lots Nine (9) and ten (10) all in Block Sixty-one (61) of the East King Tract, Belmont numbering, city of Pensacola, Florida, according to map of Thos. C. Watson, copyrighted in 1884. That the said defendant Emma King, being desirous of selling her above described property, placed the same with the complainants as real estate agents for sale, and authorized them in writing to sell the same for the sum of Three Thousand ($3,000.00) Dollars, less commission of 5 per cent to be paid to the complainants for their services for making said sale, a copy of which said writing is hereto attached marked 'A' and made a part hereof; that acting under the instructions from the said defendant, the complainants procured a purchaser for the said property at the sum of Three Thousand ($3,000.00) Dollars, who was ready, willing and able to pay the said sum, and the terms upon which the purchase was to be made were fully disclosed to both of the said defendant and assented to by her; that, however, the said defendants notwithstanding the premises, have refused to execute a deed to the said property or to pay the commission of One Hundred and Fifty ($150.00) Dollars which these complainants have earned, as above set forth. That prior to the bringing of this suit, the said Thomas C. Watson assigned his interest in said agreement to complainants.

To the end, therefore, that the defendants may, if they can, and to the best and utmost of their knowledge,

recollection and belief, full, true, direct and perfect ans-
wers make to the premises, their oaths thereto being
specially waived.

And that your honor may be pleased to decree that the
complainants have a lien upon the above described prop-
erty for their said commission of One Hundred and Fifty
($150.00) Dollars, and that the complainants may be
required to pay the same within such time as to your
honor may seem meet, and that in their default your
honor will be pleased to order a sale of the same to pay
said sum and the costs of these proceedings. And that
the said defendants, and all persons claiming by, through
or under them, may be forever barred and foreclosed of
all right and equity of redemption in and to the said prop-
erty.

And complainants pray that process of subpoena, in
due form, may issue, directed to the said Emma King and
Houston King, returnable according to law and the prac-
tice of this court. And complainants will ever pray."

Exhibit A referred to in the bill is as follows:

*"City Property Contract*.

Contract No.———

I, Emma King, of Pensacola, P. O., County of Escam-
bia, State of Florida, have this day given Thos. C. Wat-
son & Co. the exclusive sale or transfer of the following
property, to-wit: Lot Nos. as shown on back hereof.
Block No. 61 East King Tract, in the town of Pensacola
and State of Florida.

I hereby appoint and constitute said Thos. C. Watson
& Co. as my lawful agents and authorize them to enter
into a written contract for me, on my behalf, and in my
name, for the sale of said property. I agree to make a
good satisfactory deed, and if required to do so, give a

clear abstract of title to said property, showing the title of same to be fully vested in me.

For making such sale, transfer, sending me a buyer, or being instrumental in any manner whatever, directly or indirectly in selling or transferring said property, I agree to pay said Thos. C. Watson & Co. out of the first money collected five per cent commission on the whole amount or payable at.

Should I wish to withdraw the above described property from market, or advance the price, I agree to give said agents written notice thirty days prior to such withdrawal or advance. I agree to pay said agents $——— for advertising, should I withdraw said property from sale.

Any change in the price or terms agreed to by me, shall work no forfeiture in commission due said agents in case of sale or transfer of within property.

Dated this 20th day of June, 1905.

(Signed)                    Emma D. King."

We deem it unnecessary to copy what is shown on the back of the exhibit, the same consisting of a plat of the property, detailed description thereof and answers to specific questions relating thereto, for the reason that none of this information is material in the disposition of the case.

To the bill as amended the appellants interposed the following demurrer:

"Now comes the defendants Emma King and Houston King and demurs to the amended bill of complaint herein filed as being insufficient in law upon the following grounds:

1. The said bill is without equity.

2. That the said bill sets up no facts which entitle the complainant to any relief in a court of equity.

3. The said bill does not allege facts which show any charge in equity upon the separate statutory property of the said Emma King.

4. That the said bill does not allege that the said Houston King consented to any agreement in said bill alleged.

5. That the said bill does not allege that the said Houston King joined in the written agreement in said bill alleged."

This demurrer was overruled, and the appellants elected to stand upon the answer filed to the original bill. A replication was filed to the answer and a special master appointed to take the testimony. The cause came on for a final hearing upon the pleadings and proofs and a final decree was rendered by the court, on the 13th day of December, 1907, in favor of the appellees, in accordance with the prayers of the bill. From this decree an appeal was entered to this court.

The first assignment is based upon the overruling of the demurrer to the original bill, but it becomes unnecessary to consider that, so we pass to the second assignment, which is based upon the overruling of the demurrer to the bill as amended.

In the opinion rendered in the recent case of Micou v. McDonald, 55 Fla. 776, 46 South. Rep. 291, in our discussion of the effect of section 2 of Article XI of the Constitution of Florida of 1885, the question was raised as to whether a claim by a real estate broker for commissions for effecting a sale of a married woman's separate real estate can ever be properly construed to be for money "that enures to the benefit of her separate prop-

erty." It was unnecessary to answer it in that case for the reason that the bill failed to allege there was an "agreement made by her in writing." However, in the instant case the bill does contain such an allegation, and we are now called upon to determine whether or not such allegation together with the other allegations in the bill, taking the same as true, as must be done upon the demurrer, would warrant a court of equity in holding the separate real estate of a married woman liable in this case. It has been such a short time since the opinion in the case of Micou v. McDonald, *supra,* was handed down, that there is no occasion for us to repeat here anything said therein. It may prove convenient, however, to have before us the article of the constitution in question, which is as follows:

## "Article XI.

### *Married Women's Property.*

Section 1. All property, real and personal, of a wife owned by her before marriage, or lawfully acquired afterwards by gift, devise, bequest, descent, or purchase, shall be her separate property, and the same shall not be liable for the debts of her husband without her consent given by some instrument in writing, executed according to the law respecting conveyances by married women.

Section 2. A married woman's separate real or personal property may be charged in equity and sold, or the uses, rents and profits thereof sequestrated for the purchase money thereof; or for money or thing due upon any agreement made by her in writing for the benefit of her separate property; or for the price of any property purchased by her, or for labor and material used with her knowledge or assent in the construction of buildings, or repairs, or improvements upon her property, or for agri-

cultural or other labor bestowed thereon, with her knowledge and consent.

Section 3. The legislature shall enact such laws as shall be necessary to carry into effect this article."

It may be well to observe that Section 1 is a modification of Section 26 of Article IV of the Constitution of 1868, while Sections 2 and 3 did not appear in the Constitution of 1868 at all. The statutes relating to married women's property are embraced in Sections 2587 to 2594 inclusive of the General Statutes of 1906. .

Even prior to the adoption of the Constitution of 1885 a married woman's separate property might be subjected in equity to the payment of certain claims or indebtedness, under general and well recognized principles of equity jurisdiction. See Dollner, Potter & Co. v. Snow, 16 Fla. 86; Staley v. Hamilton, 19 Fla. 275; Crawford v. Gamble, 22 Fla. 487. Also see First National Bank of Pensacola v. Hirschkowitz, 46 Fla. 588, 35 South. Rep. 22, and authorities cited therein. We do not discuss the distinction between a married woman's "separate statutory property" and her "equitable separate estate," as that is unnecessary in the instant case, but it will be found in the cited cases. It would seem that the makers of the Constitution of 1885 were not satisfied with the provisions of the Constitution of 1868 upon the question of married women's separate property, so they framed Article XI, making the changes to which we have already called attention. As will be observed, section 1 expressly provides that the separate property of a married woman "shall not be liable for the debts of her husband without her consent given by some instrument in writing, executed according to the law respecting conveyances by married women." Section 2460 of the General Statutes of 1906, which originally formed section 1 of Chapter

861 of the laws of 1835, expressly provides that the husband must join in any sale, conveyance or mortgage made by a married woman of her real property, while section 2462 of the General Statutes of 1906 requires an acknowledgment by such married woman, as therein provided, in order to render such sale, conveyance, mortgage or relinquishment effectual to pass her estate or right. See Carn v. Haisley, 22 Fla. 317, and Goss v. Furman, 21 Fla. 406. The provision in section 2 of such article differs from that in section 1 in that it simply requires an "agreement made by her in writing for the benefit of her separate property." Even if we should assume or concede that the legislature has authority or power, under section 3 of such article, to enact laws providing for the joinder by the husband in such written agreements and for the acknowledgment thereof, no such laws seem to have been enacted. We are, therefore, of the opinion that it is not essential that the husband should unite or join in such agreement in writing, in order to render the same enforceable in equity as a charge upon the separate property of the married woman making such agreement. It seems to us that to hold the joinder of the husband necessary would be to read into the Constitution a requirement that the framers thereof did not see fit to insert therein. See the reasoning in Halle v. Einstein, 34 Fla. 589, 16 South. Rep. 554, and Mercantile Exchange Bank v. Taylor, 51 Fla. 473, 41 South. Rep. 22, upon the proper construction to be placed upon Article XI. We do not see that section 2589 of the General Statutes of 1906, placing the property of the wife in the care and management of the husband, affects this question in any way. We are also mindful of the fact that if this were a suit for specific performance of a written agreement to sell or convey the separate property of the

wife, such agreement would have to be executed by both husband and wife and also acknowledged. See section 2594 of the General Statutes of 1906, and Goss v. Furman, *supra*. However, the written agreement set forth in the bill in the instant case is not such an agreement as is contemplated by such statute. The contention of the appellants that the written agreement in question is invalid and not capable of enforcement for the reason that the husband did not unite therein must fail.

We now turn to the other branch of the question as to whether or not the complainants have shown by their allegations in their bill that the agreement in writing alleged in the bill to have been made by the married woman appellant should be enforced in equity as a charge against her separate property, under the provisions of Section 2 of Article XI of the Constitution. It seems to us that this question will have to be answered in the negative. Owing to the rather peculiar provisions of Article XI, authorities from other jurisdictions can aid us but little in reaching a solution. We do not see how such an agreement in writing as is set up in the bill in the instant case can be construed to be "for the benefit" of the married woman's "separate property," as the constitution requires. The most nearly in point case brought to our attention is Gore v. Carl, 47 Conn. 291, which has been cited by the appellants. In that case a statute was before the court for construction, which provided that "Actions may be sustained against a married woman upon any causes of action which accrued before her marriage, and upon any contract made by her since marriage upon her personal credit for the benefit of herself, her family, or her separate or joint estate." In that case both the wife and husband had made a written contract in which they agreed to convey certain land which was the separate

property of the wife. Upon their refusing to execute the conveyance, a bill for specific performance was filed against both the husband and wife. In the opinion the court used the following language:

"It is not the purpose of this act to remove all defences standing about a married woman and leave her and her estate responsible for any and every contract which she can be persuaded to enter into; it compels her to pay for a specified class of benefits; for money or other property actually obtained upon her personal credit for the use of herself or her family or for the benefit of her sole or joint estate. The petitioner fails to bring himself within its provisions. He has not delivered money or other property to the wife upon her personal credit which she has expended or consumed; he has not exposed himself to loss by reason of having trusted any portion of his estate to her; he is not seeking to regain anything which he before possessed; he is merely offering to pay money for at least its full equivalent; he has obtained a contract from her to convey land to himself; he brings money into court and demands the land. There is no finding that the bargain is a provident one. It is not to be presumed to be such merely because it entitles her to receive a sum of money in exchange for land. Presumably it is a hard one, else the petitioner would not have assumed the burden of asking a court to compel her to perform it.

But, irrespective of that question, the statute does not subject a married woman to the specific performance of an agreement to exchange her estate for money. Such a contract is not for the benefit of her estate within its intendment, and she still retains her right to reconsider, to repent and to refuse to execute it. Persons entering into such contracts with her become possessed of no equities

of which the statute will take notice, at best they obtain but the possibility of profiting by a hard bargain. The statute does not concern itself with ripening such possibilities into certainties."

The points of difference as well as those of similarity in that and in the instant case are readily apparent, but the reasoning seems to be sound.

There is no allegation in the bill that the agreement made in writing by the wife alone to pay a commission for selling her separate property or finding a purchaser therefor was *made for the benefit of her separate property;* nor does such an inference necessarily follow from the allegations contained in the bill and from the written agreement itself, a copy of which is attached as an exhibit to and made a part of the bill. On the contrary, her failure to perform the agreement, coupled with the fact that her husband did not sign the same, even though not essential that he should do so, and the absence of any allegation in the bill that her husband had any knowledge or notice of her execution of the agreement or approved of the same, would tend to indicate that such agreement was not made for the benefit of the wife's separate property. The allegations of the bill, taken in connection with the written agreement made a part thereof, are not sufficient to sustain a decree to charge and sell the separate property of a married woman, as prayed for in the bill.

As has been repeatedly held by this court, it is incumbent upon a complainant to allege in his bill every fact clearly and definitely that is necessary to entitle him to relief; and if he omits essential facts therefrom, or states such facts therein as show that he is not entitled to relief in a court of equity, he must suffer the consequences of his so doing. The facts and circumstances upon which a complainant bases his claim and right to relief which he

seeks are matters peculiarly within his own knowledge, and he will be presumed to have stated them as strongly and favorably to himself as he could, exercising his privilege of selecting his own language in which to couch them.

See Hancock v. Hancock, 55 Fla. 680, 45 South. Rep. 1020 and authorities there cited.

It follows that the decree must be reversed, with directions to sustain the demurrer to the bill as amended. Having reached this conclusion, it becomes unnecessary to consider the other assignments.

Decree reversed.

COCKRELL and WHITFIELD, JJ., concur.

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.