THE McCORD & NAVE MERCANTILE COMPANY V. M. S.
BURSON, et al.

1. CHATTEL MORTGAGE, *Valid.* Where a mortgage on a stock of goods
is given for $1,500, and only $1,000 is advanced thereon when it is
executed, but the balance is paid over soon after and long before
possession of the goods is taken under the mortgage, it will be treated
as a valid mortgage for the full amount named on its face.

2. SALE, *Valid against Existing Creditors.* Where a mortgagee of a
stock of goods takes possession thereof under valid mortgages, and
sells them at private sale for their full value, and applies the dif-
ference between the amount of his mortgages and the price received
for the goods to the payment of the debts of the mortgagor, such
sale is a valid sale against existing creditors.

3. FRAUDULENT SALE — *Creditor, When Not Defrauded.* Where a fraud-
ulent sale of a stock of goods is made, but in a very brief time, by
the consent of all parties thereto, it is set aside and all things re-
stored to the same condition they were in before the pretended sale,
an existing creditor of the seller is not defrauded thereby, and has
no cause of complaint.

*Error from Anderson District Court.*

THE opinion states the case.

*Johnson, Poplin & Johnson,* for plaintiff in error.

*W. J. Patterson,* and *L. K. Kirk,* for defendants in error.

Opinion by HOLT, C.: In November, 1884, M. S. Burson
and C. H. Griffin were in partnership, in Garnett. Griffin
sold his interest to one C. M. Rogers, son-in-law of Burson,
for $7,450, receiving in payment therefor the sum of $2,300
in cash, $500 to be paid in thirty days, a note, secured by
mortgage on the stock for $1,850, and the assumption of the
payment of $2,800 debts due by the firm of Griffin & Bur-
son. G. J. Rogers, the father of C. M. Rogers, advanced to
his son the sum of $1,000 in cash, which was a part of the
$2,300 paid for the goods, and agreed to let him have in ad-
dition the money to meet the payment of $500 within thirty
days; he took a note from his son for $1,500 secured by mort-

gage upon the goods in question. The father turned over to his son a note amounting to $594, which was collected; $500 hereof was applied on the payment of the $500 due Griffin ·n thirty days, and a note was given by the son to the father for the $94 excess.

In January, 1885, some of the creditors of C. M. Rogers, which was the title of the firm of Rogers & Burson, pressed their claims for payment, when Rogers sold his stock of goods to one Carey. The circumstances of the sale were as follows: Newton, a partner of G. J. Rogers in another business in Garnett, went to a bank in that city and told the assistant cashier that he would like $1,250 for a short time, and asked him to bring it down to his place of business, which he did; Newton handed the money over to Carey, taking his note for $1,250 indorsed by G. J. Rogers; Carey turned the money over to C. M. Rogers, who handed it to G. J. Rogers, his father, who credited it upon the note held by him against his son for $1,300 for money advanced to him some three years before, for which a note was given which was not due until five years from the date of the note; G. J. Rogers, having indorsed the amount on the note against C. M. Rogers, handed the money back to Newton, who in turn gave it back to the assistant cashier; no note was given to the bank for the money. Carey took possession and proceeded with the business for a short time, and when creditors threatened him he turned the goods back to C. M. Rogers. In the meantime, Griffin pressing his claim under his mortgage and threatening to foreclose it on the stock of goods for a balance of $900 remaining unpaid, G. J. Rogers bought the note and took an assignment of the mortgage, giving his note for $900. Griffin, while Carey was in possession of the goods, also brought suit against C. M. Rogers for $900 balance due on debts assumed by C. M. Rogers when he bought the goods, and in that action garnished G. J. Rogers. Shortly after, G. J. Rogers took possession of the goods, C. M. Rogers consenting. G. J. Rogers sold the goods to Griffin for $3,300, who gave a note to G. J. Rogers for $1,500, amount of first mortgage, surrendered his

note against Rogers for $900, given to pay for note and mortgage assigned, and the release of the claim in suit, wherein he was garnishee.

Rogers had indorsed a note at the bank for his son for $500, which he had been compelled to pay, and also gave his note for $43 and at another time for $44 for overdraft of C. M. Rogers, and held his son's note for $94 excess over $500 in the note given his son, in December. The firm of C. M. Rogers had turned over to G. J. Rogers certain accounts which had been partially collected, but there was still due G. J. Rogers $124 on these accounts. In January the plaintiff in error obtained a judgment in a justice's court against C. M. Rogers and M. S. Burson, and served G. J. Rogers with a garnishee summons; he answered that he was not indebted to the firm for any amount; the case was brought in the district court on the judgment of the court below against C. M. Rogers, M. S. Burson, and against G. J. Rogers, because his answer as garnishee was not satisfactory. The district court found the facts substantially; findings nine, ten and eleven are as follows:

"9. About February 13, 1885, the creditors of C. M. Rogers were pressing for payment, the firm still being insolvent, the creditors threatening said Carey with suits, and said C. H. Griffin having already brought suit, on February 5, 1885, garnished said G. J. Rogers on a claim for $900 (about) balance due on debts assumed by C. M. Rogers when they bought the stock (and which they had failed to pay.) Carey becoming alarmed, voluntarily turned back the stock to C. M. Rogers, with the accounts accruing while so in his possession, and received from C. M. Rogers his $1,250 note above referred to. Thereupon G. J. Rogers erased the indorsement of $1,250 credit on said $1,300 note; immediately thereafter C. M. Rogers, being in possession of the said stock, gave up the same on demand of G. J. Rogers, mortgagee, under his said mortgage, to wit: the $1,500 mortgage made to him, and the balance of the $1,850 mortgage so assigned to him; which mortgages were then valid and subsisting liens on said property.

"10. After so obtaining possession, G. J. Rogers, mortgagee, sold said stock at private sale to C. H. Griffin (whose suit against C. M. Rogers for $900 was still pending as afore-

said,) for a consideration of $3,300, paid as follows, viz.: by the release of the said claim so in suit for $900, and upon which said G. J. Rogers had been garnished; by the surrender of said note for $900, given for G. J. Rogers for the balance of said $1,850 mortgage, and by giving his promissory note to G. J. Rogers for the balance, $500 being the sum due on said G. J. Rogers's mortgage. Thereupon G. J. Rogers released said mortgage and gave possession of the stock to C. H. Griffin, who has since held the same. Griffin received with the goods as a part of the purchase, the accounts accruing during said Carey's possession, and said sum of $142.91 net proceeds of his sales. The said consideration of $3,300 was the fair value of the property, effects and moneys received by Griffin therefor, and the sale was made with the consent of C. M. Rogers, mortgagor.

"11. Of the notes and accounts so turned over to G. J. Rogers as collateral security, he has collected altogether the sum of $560, but has rightfully paid out of the same for said firm the sum of $90, leaving $470 applicable to the claims for which he received said notes and accounts as security, leaving the firm now indebted to him in the sum of $124, for which he holds the balance of said notes and accounts as security."

Judgment was rendered in favor of the plaintiff, against C. M. Rogers, M. S. Burson, and in favor of G. J. Rogers for costs. The plaintiff company brings the case to this court.

The plaintiff complains of the judgment in favor of G. J. Rogers, and says that both the turning over of the stock of goods by C. M. Rogers to his father, and the sale by his father to Griffin, were fraudulent. His other objections being incidental to those named, we shall briefly consider them all without specifically naming them. G. J. Rogers took possession of the goods under two mortgages, one given to him by C. M. Rogers for $1,500; when it was executed, only $1,000 was advanced thereon. Under some circumstances that might be a badge of fraud, but it is shown that very shortly afterward the remaining $500 was paid to his son by a note, which was soon collected and the proceeds applied in payment of the goods. The other mortgage was made by C. M. Rogers to Griffin for $1,850, but payments had been made thereon un-

til the balance remaining unpaid was $900; he then assigned it to G. J. Rogers, who paid full value for it. The goods were taken possession of under these mortgages by the consent of C. M. Rogers. G. J. Rogers then sold them to Griffin for $3,300, which sum the court found to be their true value. Griffin paid for them by executing his note to G. J. Rogers for $1,500, surrendering a note for $900 which he held against Rogers, and releasing him from his liability of $900 as garnishee in an action against C. M. Rogers. We perceive no fraud in these transactions which has hindered, defrauded or delayed plaintiff in the collection of its debts. G. J. Rogers and Griffin were more alert and active than the plaintiff, and although one was the father and the other a party to both the sale and repurchase, we cannot say that they did not protect themselves in a legitimate way. The scheme of selling the stock of goods to Carey did not affect this plaintiff. We believe, beyond all question, that it was a mere sham, and in the fraud both C. M. Rogers and G. J. Rogers participated. It was a very silly and dishonest transaction, but it was also a harmless one. Its consideration might be entirely left out of the decision of this case, so far as its legal effect on this plaintiff is concerned. By it no part of the goods was taken out of the stock; no money or property of the firm of C. M. Rogers was placed beyond the reach of this plaintiff; the goods were turned back by Carey, the indorsement on the note was erased, everything was placed in the same condition it was before the sham sale, and no one was injured or defrauded.

We think that all the findings of the court below are sustained by the evidence, and that the conclusions of law are correct. We therefore recommend that the judgment of the court below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.