CLEMENT, BANE & CO. v. S. T. HARTZELL, *as Sheriff of Chautauqua County*.

No. 9059.

1. CHATTEL MORTGAGE — *not fraudulent because property worth more than debt.* The fact that the goods mortgaged are more than enough in value to secure the indebtedness does not of itself establish fraud even if a badge thereof ; but perhaps the security might be so excessive as to cast suspicion upon the transaction to the extent of requiring an explanation.

2. ———— *nor because apparent debt covers future advances.* A chattel mortgage given in good faith for a greater sum than is owing by the mortgagor to the mortgagee to secure both a present indebtedness and future advances to be made by the mortgagee, is not fraudulent in law as to creditors of the mortgagor; even though the mortgage does not express upon its face that the excess is for

future advances, but recites the securing of promissory notes which amount to the existing indebtedness and the contemplated future advances combined as if all the notes were given for an existing indebtedness.

3. ———— *bona fide creditor has right to secure preference by.* It is permissible for one *bona fide* creditor of a failing debtor to secure a preference over others by obtaining a chattel mortgage from such debtor and filing it for record ; and unless such preferred creditor stands in some relation of confidence to the others he is under no obligation to disclose to them what he has done, or what he intends to do, to protect his own interest.

4. ———— *covers nothing not within terms of description.* Under a chattel mortgage upon "all the stock of clothing" and "furnishing goods" in a certain store building, no goods will pass which do not come within the description of "clothing" or "furnishing goods."

*Error from Chautauqua District Court.*
*Hon. M. G. Troup, Judge.*

REVERSED AND REMANDED.      OPINION FILED DECEMBER 5, 1896.

THE evidence tended to show that E. S. Latsbaugh, who was engaged in trade in his own building at Sedan, became indebted to the Sedan National Bank upon promissory notes amounting to $3,300, to secure which, on November 20, 1891, he executed a chattel mortgage on his entire stock of goods ; but this mortgage was not filed for record until January 20, 1892. After the execution of said mortgage, Latsbaugh became further indebted to said bank in the sum of $150 evidenced by two promissory notes of $75 each. He was indebted to the Western Furnishing Goods Company in a sum between $300 and $400, which indebtedness was unsecured. He owed Clement, Bane & Co. of Chicago, on account for goods $3,197.45, and on a promissory note of date November 18, 1891, for $400 payable in 60 days with interest at 8 per cent. per annum from date ; all of which indebtedness was unsecured. There was an incumbrance of $1,000 on the store building,

which was probably the greater part of its value, and an incumbrance of $600 on a quarter-section of land north of Sedan, which was more than half its value. He also owned a block in East Sedan, worth $100 to $200 unincumbered. This was substantially all the property he owned outside of the stock of goods. On January 18, 1892, John T. Earhart, the traveling salesman and representative of Clement, Bane & Co., called upon Latsbaugh for the purpose of taking his order for goods for the spring trade, his sample trunks being in the store and open ready for the examination of goods. Before anything had been done, however, in the way of selection, Latsbaugh told Earhart that he was owing a great deal of money. Earhart then said to Latsbaugh that he was owing Clement, Bane & Co. a pretty large bill, and before going any further he would like to have security for the past indebtedness, and also for the goods ordered, and Latsbaugh agreed to this. Accordingly Earhart went to the law office of J. D. McBrian and employed him to draw up a chattel mortgage on Latsbaugh's stock of goods. Earhart then went back to the store and had Latsbaugh accompany him to McBrian's office where a chattel mortgage was drawn to secure nine promissory notes of $555.55 each, one being payable each month for the nine succeeding months. The description of the mortgaged property was as follows: "All the stock of clothing, furnishing goods and fixtures now owned by E. S. Latsbaugh and kept in the building situated on lot number five (5) in block number twenty-two (22) in the city of Sedan, Chautauqua County, Kansas, and all notes and book accounts pertaining to his business." Nothing was said to McBrian about the sum secured being greater than the existing indebtedness, and he knew nothing about the transaction

further than that he was instructed to draw the notes and secure them by the chattel mortgage. Before the delivery of the papers Earhart asked Latsbaugh if his stock was subject to any incumbrance, and Latsbaugh answered that he had given some kind of a document of like nature to secure the Sedan National Bank, but he did not know exactly what it was. It was agreed at the same time that Latsbaugh should continue to sell the goods as the agent of Clement, Bane & Co. ; that he should deposit the proceeds of the sales in the First National Bank each day in his name as such agent, and should remit the same, less expenses, weekly to Clement, Bane & Co. The mortgage was then recorded, and thereafter on the same day a selection of spring goods was made and a bill thereof transmitted to Clement, Bane & Co., the amount of the order being $1,823.40. Latsbaugh then gave Earhart a check on the Sedan National Bank for $200, which was paid, leaving a balance of $8 only to his credit. The $200 payment was credited on one of the notes. No sign was put up at the store indicating that Latsbaugh was continuing business as the agent of Clement, Bane & Co. and no change was made in the books of account, although some goods were sold on credit and charged upon the books.

On January 21, 1892, the Western Furnishing Goods Company and the Sedan National Bank commenced actions against Latsbaugh on their respective claims. Orders of attachment were issued therein, and S. T. Hartzell, the Sheriff, levied said writs upon said stock of goods and fixtures and the books of account. The appraisement shows that the book accounts were appraised at $550, and the goods and fixtures at $6,056.19, making a total of $6,606.19. About the time that the order for the bill of spring goods reached Clement,

Bane & Co. they received notice of the attachment suits, and the goods were never forwarded to Latsbaugh. On February 10, 1892, Clement, Bane & Co. commenced their action of replevin against the Sheriff; and said goods and fixtures and the account books were taken by the Coroner from the Sheriff, who gave a redelivery bond and retained possession, and by order of the Court he sold all the property on March 12, 1892, at public auction to the Sedan National Bank for $4,040. In the petition in the replevin action Clement, Bane & Co. claimed a special ownership to the extent of $3,403.05, besides interest, and they averred that the balance of the claim under their chattel mortgage was for goods bargained and sold, but not delivered, to Latsbaugh. After the chattel mortgage was given to Clement, Bane & Co. Latsbaugh executed a mortgage on the store building to the Sedan National Bank to secure one of the promissory notes held by it amounting to $1,100; this was a second mortgage. A trial of the replevin action before the Court without a jury resulted in a general finding and judgment in favor of the defendant on June 22, 1892, and Clement, Bane & Co. bring the case here for review.

*Dobbs & Stoker*, for plaintiff in error.

*H. E. Sadler*, and *J. B. & W. E. Ziegler*, for defendant in error.

MARTIN, C. J.   I. The finding of the Court being general in favor of the defendant, the judgment based thereon must be affirmed if there is any evidence in the record fairly tending to impeach the validity of the mortgage executed by Latsbaugh to Clement, Bane & Co.; otherwise it must be reversed.   Counsel

for the plaintiffs argue at length that the value of the property securing their claim was not excessive, and even if so, the validity of their chattel mortgage would not be affected by reason thereof. Counsel for defendant say that the question of excessive security was considered by the trial court only incidentally, and they do not seem to rely upon this point. It appears to be well settled that a chattel mortgage is not rendered *per se* either void or voidable

1. Mortgage not fraudulent because property worth more than debt.

because it covers more property than enough to secure the debt. In the present case Earhart supposed the value of the mortgaged property to be about double the amount of the past-due indebtedness upon the account and the promissory note just maturing; but, as the mortgage was intended also to secure the amount of the order for spring goods, placed at about $1,800, it could scarcely be contended that the security was excessive. It is a matter of common knowledge that a stock of goods closed out at a mortgagee's or a sheriff's sale will not generally bring anything near its cost price, and before the trial of this case the goods had been sold, presumably to the best advantage, for $4,040; a sum not greatly in excess of the past-due indebtednss to Clement, Bane & Co. after the payment of costs and expenses, and not nearly sufficient to secure them if the order for the spring goods had been filled as contemplated at the time the chattel mortgage was executed. In *Miller v. Krueger,* 36 Kan. 344, 348, the mortgagee supposed that the value of the property mortgaged was about double the amount of the indebtedness secured thereby, although on the trial the jury found the value of the property to be less than the amount of the debt; and it was held that the fact that the mortgagee overestimated

the value of the property did not render the mortgage void. The mere fact that the security given is more than necessary does not of itself establish fraud. Some of the cases hold that it is not even a badge or indication of fraud; yet we are not prepared to say that the security might not be so excessive as to cast suspicion upon the good faith of the transaction to the extent of requiring an explanation. *Downs v. Kissam*, 10 How. 102, 108; *Grand Island Banking Co. v. Costello*, 45 Neb. 119, 140; *Kilpatrick-Koch Dry Goods Co. v. Strauss*, 45 id. 793.

II. It is said in the brief of the defendant's counsel:

"The real contention by the defendant was that the giving of the mortgage for $1,800 of debt which did not exist, the concealment of such fact from plaintiff's own attorney, and from Richardson and Stallard, officers of the Sedan National Bank, in connection with many other material facts and circumstances surrounding the transaction, showed bad faith on the part of the parties to the mortgage, and proved that Latsbaugh and Earhart cooperated and conspired together to hinder, delay and defraud the Sedan National Bank, and all other creditors of Latsbaugh."

The principal point relied upon by the defendant is that the chattel mortgage was given for a sum about $1,800 greater than the existing indebtedness. If the proof tended to show that the inclusion of this extra sum was fraudulent on the part of the plaintiff, and for the purpose of covering up Latsbaugh's property with a pretended claim in order to hinder or delay other creditors, this would render the mortgage void as against him. *Wallach v. Wylie, as Sheriff*, 28 Kan. 138, 152, 153; *Winstead, Sheriff, v. Hulme*, 32 id. 568, 575. We fail, however, to find in the record any

2. Not fraudulent because apparent debt covers future advances

evidence of such fraudulent intent.   The spring goods appear to have been ordered in good faith, and presumably would have been forwarded soon had it not been for the action of other creditors in pressing their claims.   The fact that a mortgage given by an insolvent person secures a greater sum than is actually due is not conclusive evidence of fraud, but is subject to explanation (*Bush v. T. G. Bush & Co.*, 33 Kan. 556, 567; *Corbin v. Kincaid*, 33 id. 649, 652) ; and a chattel mortgage may be lawfully given to secure future advances.   Jones, Chat. Mort. § 94, and cases cited. It cannot be extended as against a creditor of such mortgagor to cover advances not contemplated at the time of its execution (*Sims v. Mead*, 29 Kan. 124) ; but a mortgage on a stock of goods for $1,500 was sustained by this Court although the sum of $1,000 only was advanced at the execution of the mortgage, the remainder being paid soon thereafter. *Mercantile Co. v. Burson*, 38 Kan. 278.   And in another case it was held by this Court that the giving of a mortgage for a larger sum than was loaned thereon and with a view of covering future loans up to the amount of the mortgage, is not conclusive evidence of fraud, but is open to explanation as to the good or bad faith of the parties to the transaction.   *Allen v. Fuget*, 42 Kan. 672.   And where a chattel mortgage was made to secure in part a valid debt and in part money advanced upon an illegal contract, this Court held that it might be enforced to the extent of the valid debt although void as to the residue, the illegal part being separable from that which was unobjectionable (*Rathbone v. Boyd*, 30 Kan. 485, 489) ; and, this being so, we see no good reason against the securing of an existing debt and a contingent liability by the same chattel mortgage.

Considerations of much weight have been suggested against the validity of chattel mortgages given to secure future advances without truly disclosing the nature of the transaction, or under an appearance of an existing indebtedness, as in this case. Doubtless much trouble and litigation would be avoided if chattel mortgages were so drawn as to state fully and explicitly the nature of the obligations that they are given to secure ; but the weight of authority appears to establish the doctrine that it is only necessary that the debts secured be described with such certainty as to enable creditors to ascertain, either from the condition of the mortgage or by inquiry *aliunde,* the extent of the incumbrance ; and that the mortgage may be in the form of a security for the payment of a certain sum, leaving the true nature of the transaction to be shown by parol proof. Jones, Chat. Mort., § 96 and authorities cited ; *Berry v. O'Connor,* 33 Minn. 29 ; *Griffin v. New Jersey Oil Co.,* 3 Stock. (N. J. Eq.) 49. The Supreme Court of California held, in *Tully v. Harloe,* 35 Cal. 302, that a note and mortgage given in good faith for a greater sum than is due by the mortgagor to the mortgagee, to secure both a present indebtedness and future advances to be made by the mortgagee, is not fraudulent in law as to the creditors of the mortgagor because given for a greater sum than is due, even though the mortgage does not express upon its face that the excess is for future advances ; and that such mortgage need not express its object upon its face although it would be better that it do so.

III. The knowledge of Earhart that Latsbaugh was largely indebted to the Sedan National Bank and others is imputable to the plaintiffs ; but it was permissible for them to secure a preference over all other creditors, and this they did by obtaining a chattel

mortgage and having it filed for record. *National Bank v. Ridenour*, 46 Kan. 718. They were under no obligation to disclose to their attorney anything more than was necessary for his information in drawing the notes and the mortgage, nor to tell the officers of the Sedan National Bank what they had done or what they were going to do. No relation whatever existed between the plaintiffs and the Bank requiring any disclosure by the former to the latter. If the Bank had relied upon its chattel mortgage, it may be that Earhart had sufficient notice of its existence to put him and the plaintiffs upon inquiry as to its terms and thus cure its want of registry, and so the claim of the Bank might have been entitled to priority over that of the plaintiffs; but the Bank chose to rely upon an attachment lien of a later date than that conferred by the chattel mortgage of the plaintiffs, and we cannot consider what rights the Bank might have obtained under its chattel mortgage. This disposes of the only specific objections raised against the validity of the chattel mortgage given to the plaintiffs, and we need not consider any other. We will say, however, that the evidence affirmatively shows that the indebtedness of Latsbaugh to the plaintiffs was *bona fide*, the order taken for the spring goods was in the usual course of business, and we see nothing whatever indicating any other purpose on the part of the plaintiffs than to secure the past indebtedness and that which would accrue by the filling of the order for spring goods.

3. Right of bona fide creditor.

IV. The plaintiffs replevied, with the other goods, 437 pairs of men's, boys', women's and children's boots, shoes, slippers, rubbers and arctics, and some other articles perhaps not covered by the plaintiffs' chattel mortgage. Earhart testified that boots and

4. Nothing covered not within terms of description.

shoes did not come within the description of clothing or furnishing goods. The description of the stock in the mortgage is restrictive, and the plaintiffs obtained no right to goods not within its terms. On another trial this branch of the case will no doubt receive the further consideration of the trial court.

The judgment must be reversed, and the case remanded for a new trial.

All the Justices concurring.