Mercantile Ex. Bank v. Taylor and Aitken—Syllabus.

THE MERCANTILE EXCHANGE BANK, A CORPORATION
ORGANIZED AND EXISTING UNDER THE LAWS OF THE
STATE OF FLORIDA, APPELLANT, V. GEORGE W. TAYLOR
AND JOHN W. AITKEN, PARTNERS UNDER THE FIRM
NAME AND STYLE OF AITKEN, SON & COMPANY, AP-
PELLEE.

1.  A married woman, engaged in a mercantile business in her
    own name, and owning merchandise which is her separate
    statutory property, valued at $18,000 and indebted to a
    bank in the sum of $4,400, for which she had given her
    notes for moneys borrowed by her and used in purchasing
    and replenishing her said stock of merchandise, executed
    on the 26th of May, 1903, a mortgage to the bank on said
    stock of merchandise, and a lease of her store room to
    secure the payment of said borrowed moneys, costs, &c., in
    which mortgage the husband of the married woman joined,
    and therein himself covenanted to pay the said money.
    By the terms of the mortgage the bank was authorized to
    take immediate possession of the mortgaged property, and
    to sell and dispose of the same and to pay the debt secured,
    costs, &c.  The bank went into immediate possession of
    the mortgaged property and was proceeding to sell and
    dispose of the said mortgaged property when enjoined by
    a creditor of the married woman.  In a proceeding in
    chancery brought by a creditor of the married woman,
    attacking the mortgage to the bank, it is held:   (a) That
    the married woman was authorized under the constitution
    and laws to execute such a mortgage, that it was bona
    fide, and supported by a valuable consideration.

(b)   That as it does not appear what was the extent of the
      indebtedness of the  married woman  which could  be
      charged in equity upon her separate statutory property,
      nor how much property she owned, nor the value at the
      time she executed the mortgage, it cannot be held void
      as hindering, delaying or defrauding other creditors.

2. The fact that a mortgage is made on $18,000, worth of property to secure a debt of $4,400, is not of itself. sufficient to establish a fraudulent intent in the execution of the mortgage. ·

This case was decided by Division B.

Appeal from the Circuit Court for Duval County.

STATEMENT.

On the 1st day of September, 1903, Aitken Son & Company filed a bill in the Circuit Court of Duval County, Florida, against Ruth E. MacDonald, Malcolm G. MacDonald, her husband, and the Mercantile Exchange Bank, a corporation organized under the laws of Florida and having its place of business in the City of Jacksonville, wherein complainants allege that they are engaged in business in the City of New York and have been for many years last past, and that they sold to the defendant, Ruth E. MacDonald, certain goods, wares and merchandise shown by a statement attached to the bill on which there is due for  purchase  money the sum  of $599.93, which was due and unpaid, and that said goods, wares and merchandise were purchased by the said Ruth E. MacDonald and delivered to her for the benefit of her separate property and to be sold by her in the conduct of her business conducted  in the City of  Jacksonville, Florida; that at the time the said goods were sold and sometime prior thereto Ruth E. MacDonald was the wife of Malcolm G. MacDonald and was conducting a business of buying and selling dry goods, millinery and other merchandise in the City of Jacksonville, and personally had charge, management and control of her said business under the name and style of Mrs. M. G.

MacDonald, and that the said business was of considerable value, to-wit: seven thousand . dollars and was the separate and statutory property of the said Ruth E. MacDonald; that the said goods were sold to the said Ruth E. MacDonald upon her promise to pay for the same and were sold upon her sole credit and to become her sole and separate statutory property and was sold upon the sole credit of her statutory property and for the benefit thereof for the purpose of replenishing her stock of merchandise in the usual course of carrying on her business and the said goods became and were a part of the said statutory property and went into the benefit of her said business of which she was the sole owner, and that the amount due the complainants is a just claim and is a charge in equity upon the said separate statutory property of the said Ruth E. MacDonald or so much thereof as may be necessary to satisfy complainant's demands with interest, costs and solicitor's fees.

That on to-wit the 26th of May, 1903, the said Ruth E. MacDonald and Malcolm G. MacDonald, her husband, executed and delivered to the Mercantile Exchange Bank, defendant herein, a certain alleged mortgage to secure the payment of certain promissory notes set forth in said mortgage, to-wit: a note dated May 25, 1903, for $1300.00 with interest and costs payable ten days after the date thereof to the said Bank; a note dated March 6, 1903 for $1300.00 with interest and costs payable ninety days after the date thereof to the said Bank; a note dated April 9, 1903 for $1000.00 with interest and costs payable sixty days after the date thereof to the said Bank; a note dated April 14th, 1903, for $800.00 with interest and costs payable sixty days after the date

thereof to the said bank, all of which notes are signed and executed by the said Ruth E.   MacDonald under   the name and   style of Mrs.   M.  G.   MacDonald; that · said alleged mortgage ιgranted,  bargained, sold,   assigned, transferred, released, conveyed and confirmed unto the said Mercantile Bank, its successors, assigns and trans-ferees, a certain lease held by the said defendant, Ruth E. MacDonald on a store-room numbered one hundred and two (102)  West   Forsyth  Street in   Jacksonville, Florida, in which ιsaid   defendant was doing  business, also all the personal   property of the said   defendant, Ruth E. MacDonald   contained in said   store-room. as shown by the certified copy of the said mortgage attached and made a part of the bill as exhibit "B"; that said mortgage was filed for record in the office of the Clerk of the Circuit Court of Duval County on to-wit the 27th day of May, 1903, and the bill alleges that the Mercantile Exchange Bank on the 27th day of May, 1903, entered into and took possession of the said ιstore and business of Ruth E. MacDonald and continued in full and absolute management and control of said store and business until the appointment of a receiver therefor; that the Mercan-tile Exchange Bank has been disposing of said stock of goods and other personal property of considerable value, to-wit $5,500.00 or more, and would have continued to dispose of said stock of goods and personal property, and upon information and belief would have applied the pro-ceeds on the said notes and claims of the said Bank un-less the said Bank had been restrained and enjoined from doing so, to-wit on July 16th, 1903, when N. P. Bryan was appointed receiver of the said business.

The bill alleges that the notes given to the Bank by the defendant, Ruth E. MacDonald are void and invalid because made and executed by a married woman; that

the mortgage to secure the same under which the Bank is in possession of the goods and other personal property of Ruth E. MacDonald is invalid and void, does not constitute a lien upon the property of the defendant Ruth E. MacDonald and does not constitute a valid claim which can be enforced against the said Ruth E. MacDonald either in law or equity; that on June 11, 1903, the Mercantile Exchange Bank commenced a suit in the Circuit Court of Duval County whereby it seeks to foreclose said alleged mortgage and to make a sale of said property for their interest, costs, charges and expenses including attorney's fees which the said Bank had incurred in the foreclosing and enforcement of the mortgage; that the said suit is improperly brought by reason of the fact that the said notes and the alleged mortgage are void and that said suit should be enjoined and restrained; that said Bank has in its possession certain accounts and demands of the said Ruth E. MacDonald against various persons amounting to a considerable sum to be applied to the indebtedness due to the said Bank.

And the bill alleges that the notes and mortgage given by Ruth E. MacDonald to the Mercantile Exchange Bank hinder, delay and defraud other creditors of the said Ruth E. MacDonald; that the mortgage was not given upon good consideration and *bona fide;* that the goods and property were not conveyed or assured to the said Bank upon good consideration and *bona fide,* the said Bank at the time of the said conveyance or assurance to them made not having any manner of notice or knowledge of the hinderance, delay and fraud upon the creditors of the said Ruth E. MacDonald; that Ruth E. MacDonald and Malcolm G. MacDonald, her husband, have left the State of Florida and are now in New York and that they have

32 S. C.

abandoned the said business of the said Ruth E. Mac·
Donald and left the same in the possession, management
and control of the defendant, the Mercantile Exchange
Bank, and that said Ruth E. MacDonald is insolvent and
unable to pay the just liabilities, damages and claims
against her; and that said business should be wound up
and the assets thereof distributed in this proceeding. The
bill prays that the defendants may be required to answer
the bill, but not under oath; that the demands found to
be due the orators upon an accounting be decreed to be
a charge upon the separate and statutory property of
Ruth E. MacDonald described in the bill and that so
much thereof be sold as will be necessary to pay the ora-
tors' claim, interest, costs and solicitor's fees; that the
said notes and the alleged mortgage given by the Bank
may be decreed null, void and invalid and that the said
defendant Bank be perpetually enjoined and restrained
from a further prosecution of its suit to foreclose said
mortgage and be required to account for all moneys,
property, goods or merchandise turned over and delivered
to it by the said defendant Ruth E. MacDonald and
that the proceeds derived from all sales and distributions
of the property be paid into the registry of the court;
that the orators be decreed to have a lien upon the said
funds, proceeds and property now in the hands of the
receiver from the date of the appointment of the receiver
herein, and that such lien be decreed prior in dignity to
all liens except the lien of Armstrong Cator & Co.; that
a master be appointed to state a proper account between
Ruth E. MacDonald and the orators and to ascertain the
assets, credits and liabilities of the said defendant;
that N. P. Bryan, receiver as aforesaid, be ordered to
take into his possession all the property of Ruth E. Mac-
Donald as hereinbefore set forth and to convert all the

said property into money at the earliest possible moment, collect the debts due the said Ruth E. MacDonald, bring suits and to do all other things necessary to protect the assets of the said Ruth E. MacDonald and for general relief.

The foregoing contains the substance of the bill.

Copies of the notes and the mortgages referred to in the bill are attached thereto as exhibits. On the 1st of September, 1903, the Circuit Judge made an order enjoining the Mercantile Exchange Bank from prosecuting its suit for the foreclosure of its mortgage and notes until the further order of the court and extending the receivership of N. P. Bryan who had before been appointed receiver in the case of Armstrong, Cator & Company against the defendants to this case. On the 2nd of November, 1903, the Mercantile Exchange Bank filed its answer to the bill alleging that it had no knowledge or information in reference to the purchase of goods by Ruth E. MacDonald from the complainants and does not admit said allegation, but requires proof of it. It admits that Ruth E. MacDonald was and still is the wife of Malcolm G. MacDonald as alleged; that Ruth E. MacDonald was conducting a business of buying and selling dry goods and millinery as alleged; that she controlled said business under the name of Mrs. Malcolm G. MacDonald; that the business was of considerable value and believes it was fully of the value of seven thousand dollars; that it was the separate statutory property of Ruth E. MacDonald; that it has no knowledge or information whether the goods sold by the complainant went into her stock of merchandise and were separate statutory property of her or that the indebtedness alleged was a charge in equity upon said goods or stock of merchandise, but requires strict proof. The answer alleges that if said

claims are liens in equity upon the statutory property of Ruth E. MacDonald they were such without notice actual or constructive to the defendant Bank, and that the said property is subject to the first lien of the defendant's mortgage. The answer admits the execution of the notes and mortgage described in the bill to the defendant; it admits that the defendant about the time alleged in the bill did enter into and take possession of the store and other property of the defendant Ruth E. MacDonald described in the said mortgage and continued in the control and possession of the same and engaged in selling and disposing of the said goods and other property up to the time of the order of this court made on the 13th July appointing a receiver in the suit of Armstrong, Cator & Company against the defendant; denies that it has continued in the possession of any part of said property or was disposing of and selling the same at the time of the filing of the bill in this case and alleges that it delivered all the property remaining in its possession to N. P. Bryan, the receiver appointed in said cause; it denies that the notes and mortgage given the defendant by Ruth E. MacDonald are void or invalid, but avers that the said notes and mortgage constitute a valid claim against separate statutory property of the said Ruth E. MacDonald. The answer avers that the said notes and mortgage are given for the indebtedness incurred by Ruth E. MacDonald for money borrowed from the defendant furnished and advanced to her for the benefit of her separate statutory property, to-wit: for the purchase and replenishing of her stock of merchandise, in paying bills incurred therefor, and in conducting and carrying on her business as set forth in the said mortgage. The answer admits that the defendant about June 11, 1903, commenced a foreclosure suit of the said mort-

gage, but denies that the suit was improperly brought and that it had no right to the relief prayed, and avers that at the time of the commencement of the said suit the mortgage was due, subject to foreclosure, and a large sum was due thereon to the defendant. The answer denies that the said notes and mortgage hinder, delay and defraud other creditors of the said Ruth E. Mac-Donald; it denies the allegation of the bill that the mortgage was not given upon good consideration and *bona fide,* but alleges that the transaction was *bona fide* and upon good consideration, to-wit: money furnished and advanced to the said Ruth E. MacDonald for the use and benefit of her separate statutory property which was the subject of the said mortgage and assignment; the defendant alleges that it has no knowledge of whether at the time of the filing of this bill Ruth E. MacDonald was insolvent and unable to pay her just liabilities and therefore neither admits nor denies the same. The answer alleges that the defendant obeyed the order of the court in all respects in turning over and delivering to N. P. Bryan the property which it was therein directed to do; the answer denies that the moneys received by it from the sale of the said property of the said Ruth E. MacDonald are trust moneys or that the same should be accounted for to the receiver and held by him for the creditors of Ruth E. MacDonald and denies that any creditors of the said Ruth E. MacDonald except the defendant have any right or interest in and to the moneys received by this defendant from the sale of the said property when in its possession and avers that said moneys were received by it in payment of the said mortgage under the terms thereof. The answer alleges that having taken possessioon of the property under the terms

of the said mortgage and the accounts turned over to it, proceeded with due diligence in the exercise of economy and to the best advantage to make a sale of the goods and collect said accounts; that up to the time when it surrendered in its possession to the receiver it had surrendered and delivered possession of said property, and choses in action remaining in its possession to the receiver it had realized thereon the sum of $5,541.87 net after paying expenses; that while the said sum in the case of this defendant is more than sufficient to cover the indebtedness to it by the said Ruth E. MacDonald at the time of the execution of the said mortgage and accrued interest thereon; that this defendant has had to incur large expenses and liabilities in the employment of attorneys and solicitors and court costs in the foreclosure suit and in defending the said mortgage in this suit and in the suit of Armstrong, Cator & Company and certain other suits brought by James J Johnson and others against this defendant on the chancery side of this court, and seeking similar relief to that sought in this case; also in the petition of involuntary bankruptcy instituted against Ruth E. MacDonald by Tefft, Weller & Company and others in the District Court of the United States for the Southern District of Florida based upon the said mortgage as a fraudulent preference of a creditor and as being an act of bankruptcy. The answer avers that all the costs, charges and attorneys' fees are secured to be paid by the said mortgage and prays that the same may be allowed, and is advised that they will not be any less than $1500.00; the answer avers that the said sum in its hands is not sufficient to pay the indebtedness secured by the said mortgage together with the said costs, charges and

attorneys' fees; the answer contains a general denial of all other matters in the bill not therein sufficiently confessed, traversed, avoided or denied; the answer also contains a demurrer to the bill for want of equity.

A replication was filed to the answer and testimony taken by an Examiner. The cause was then heard, and a decree entered in which the equities were found to be with the complainants, fixing the amount due them at $599.93, with interest amounting to $91.56 as the price of goods, wares and merchandise purchased by Ruth MacDonald, in the conduct of her mercantile business as set forth in the bill, and which complainants were entitled to have charged in equity on said property, and declaring a lien thereon for the same and costs upon said separate statutory property, describing the same property covered by the mortgage of the defendant bank, to commence from the appointment of the Receiver on September 1st, 1903, and declaring a lien in favor of complainants upon the proceeds of said property sold by said bank, declaring the mortgage of the bank null and void, and cancelling and setting aside the same, requiring the defendant bank to pay said proceeds, viz: $5,541.87 instanter into the registry of the court. It also declares the lien of Armstrong, Cator & Company a prior lien on the same property, and that the complainant must, therefore, resort to the fund deposited by The Mercantile Bank with the Clerk of the Court. The decree also perpetually enjoins the bank from prosecuting the suit for foreclosure of its mortgage, and contains other details not necessary to be stated in order to the understanding of the questions presented here. The defendant, The Mercantile Exchange Bank, appeals from this decree. Such other facts as may be necessary to be considered will be given in the opinion.

*Fleming & Fleming,* for Appellant.

*John W. Dodge,* for Appellee.

HOCKER, J., (*after stating the facts.*)  There are ten assignments of error, the first based on the interlocutory order of the Chancellor  enjoining The  Mercantile Exchange Bank from foreclosing its mortgage against the property of Ruth E.  MacDonald, and the  remainder based on the final decree, and upon the several features of that decree.  The contention made here by the appellees to support the decree both orally and in their briefs, may be divided into two prospositions:  First, that the mortgage of the bank was not given upon good consideration, was not bona fide and was void, and, second, that the notes and mortgage hindered, delayed and defrauded other creditors of Ruth E. MacDonald.

The testimony establishes the following facts:  That Mrs. M. G. MacDonald who was a married woman, the wife of M. G. MacDonald, for several years before the notes and mortgage were executed to the bank, had been engaged in carrying on in her own name, and for her own benefit, a mercantile business in Jacksonville, Florida, buying and selling millinery and other goods; that she had during that time kept an account with The Mercantile Exchange Bank, and had been in the habit from time to time of borrowing money from the bank with which to pay for goods used by her in her said business; that she had given the business her personal experience and  attention; that  the property  thus acquired by her was her separate statutory property; that about the time of the execution of the notes described in the bill she had become indebted to the bank on account of moneys borrowed by her for use and used in her

said business in paying for merchandise which went into her stock to the extent of $4400.00, evidenced by the said notes; that to secure the payment of this indebtedness she and her husband executed the mortgage which the bill seeks to have annulled; that the mortgage itself in the plainest terms states that the money which was so borrowed was used by Mrs. MacDonald in carrying on her said mercantile business, and contains a covenant by both Mrs. M. G. MacDonald and her husband to pay the indebtedness evidenced by the said notes, and provides for the delivery of possession of the mortgaged property, which was clearly the separate statutory property of Mrs MacDonald, to the bank and authorizes it to sell and dispose of the same and apply the proceeds to the payment of the costs of selling and disposing of the same, and to the payment of the indebtedness to the bank, and provides for attorneys' fees for collecting and enforcing the rights of the mortgage.

The mortgage was recorded in Duval county on May 27th, 1903. The bank immediately took possession of the mortgaged property, Mrs. MacDonald being in poor health, and began to dispose of it, and up to the time it was enjoined and the property put in the hands of a Receiver in the suit of Armstrong, Cator & Company v. the defendants, viz: on the 16th of July, 1903, the bank had realized the net sum of $5541.87 from the property.

On June 11th, 1903, The Mercantile Exchange Bank filed a bill to foreclose its mortgage, which by its terms was then due and payable. On June 12th, 1903, one of the creditors of Mrs. MacDonald filed an involuntary petion in bankruptcy against her in the United States Court charging that said mortgage was a preference, and an act of bankruptcy, and that she was insolvent. It appears from some of the testimony that upon a hearing

of this petition upon the testimony it was denied on the ground that Mrs. MacDonald was not insolvent. It appears from the testimony that the stock of goods about the time the mortgage was executed was worth $18,000, but it does not clearly appear what amount of money Mrs. MacDonald owed at that time. One of the witnesses, F. P. Fleming, Jr., who was of counsel for the bank states that under the directions of his firm an inventory was made of Mrs. MacDonald's stock, and a list of her assets and liabilities made up, which enabled the firm to conclude that she was at that time solvent. This evidence was objected to, but no ruling was ever made upon this objection. We cannot discover from the evidence any lack of good faith in the transactions between Mrs. MacDonald and The Mercantile Exchange Bank, culminating in the execution of the notes and mortgage, or in the delivery of the possession of the mortgaged property to the bank for disposition in accordance with the terms of the mortgage. The appellees, however, contend, as we understand the contention, that the mortgage was void because the notes of Mrs. MacDonald which it was given to secure were void, and there was not consideration for said mortgage such as is contemplated in section 2, Article 11 of the Constitution of Florida of 1885, as affording a basis for a charge in equity upon the separate statutory property of a married woman, and that there is no authority under the laws of Florida for the execution of such a mortgage. This section of the Constitution has been examined several times by this court, beginning with the case of Halle v. Einstein, 34 Florida 589, 16 South. Rep. 554, and has never been construed so far as we are informed as a limitation upon the power of a married woman to dispose of her separate statutory property on her own motion for any purpose which is

lawful under the statute laws of Florida, and in constru-
ing the constitution and statutes relating to this ques-
tion we should always keep in  mind that the  statutes
permit a married woman at her discretion to mortgage
her real estate (section 1956, R. S. 1892) and to make
sales, transfers and conveyances of any of her separate
statutory property (section 2072 R. S. 1892) under the
conditions there given, while section 2, Article 11 of the
Constitution gives a court of equity the power *in invitam*
to declare liens upon her separate property in the cases
there enumerated.   The first section of Article 11 con-
tains a limitation upon her power of encumbering her
separate property with liability for the payment of her
husband's debts.  It provides that in order for it to be so
liable, she must have given consent by some instrument
in writing executed according to the law respecting con-
veyances by married women.   Therefore such a liability
cannot be created in any other manner.  But as we un-
derstand the case of Halle v. Einstein, *supra,* the second
section of said Article does contain a limitation upon
the power of Courts of Equity to subject her separate
statutory property to the payment of obligations or debts
contracted by a married woman (p. 602).  The right of a
married woman at her own instance to dispose of her
separate statutory personal property by sale, transfer and
conveyance under the authority of the statute (section
2070 R. S. 1892) is recognized as existing in Walling v.
Christian & Craft Grocery Co., 41 Fla. 479, 27 South.
Rep. 46, decided several years after the case of Halle v.
Einstein, and this doctrine has been recognized by this
court even since the case of Tunno v. Robert, 16 Fla. 738,
was decided.  It is held in these cases that the statute
should be liberally construed in giving effect to the trans-

fers of the wife. It was applied as embracing a pledge of the wife's stock in a corporation as security for her husband's debts in the case of Springfield Company v. Ely, 44 Fla. 319, 32 South. Rep. 892. If a married woman may lawfully under the terms of the statute (Sec. 2070 R. S. of 1892) pledge her stock in a corporation to secure her husband's debt, we can perceive no reason why she may not lawfully mortgage her separate statutory personal property to secure the payment of money which she declares in the mortgage itself was used for the benefit of her separate property and which the husband by his covenant in the mortgage binds himself personally to pay. The notes given by Mrs. MacDonald could not be made the basis of a personal judgment against her, and because of this fact we understand the appellee to contend that the mortgage was without a present consideration and void. But it seems to us there are several objections to this contention. First, the husband's obligation to pay the debt contained in the mortgage is secured by the mortgage, and, secondly, the mortgaged property was delivered to the mortgagee bank which took possession of it and was proceeding to execute and carry out the provisions of the mortgage when its possession was interrupted by the receivership. These were present considerations for the mortgage. Jones on Chattel Mortgages (3rd ed.) Sec. 80. In addition there was the equitable consideration that the money represented by the notes was actually used by Mrs. MacDonald for the benefit of her separate statutory property. First National Bank of Pensacola v. Hirschkowitz, 46 Fla. 588, 35 South. Rep. 22. We are therefore of opinion that the mortgage executed by Mrs. MacDonald and her husband in favor of the Mercantile Exchange Bank upon her personal statutory property, which mortgage was properly

recorded, was authorized by section 2070 of the Revised Statutes of 1892, and was founded upon a good, valuable and sufficient consideration, and the mortgaged property having been delivered into the possession of the mortgagee as provided by section 1983 of the Revised Statutes of 1892, a valid lien was thereby created on said property, by the lawful act of the parties themselves.

We will now consider the second contention that this mortgage was not bona fide and that it hindered, delayed and defrauded other creditors of Mrs. MacDonald. To sustain this contention the appellees quote in their brief at some length the testimony of the Cashier of the Bank with the view of showing that the bank in lending money to Mrs. MacDonald did not rely for security on her separate statutory property, but upon her personal integrity and ability. This, even if it were satisfactorily shown, about which there is doubt does not seem to be material.

It is also contended that there is such a discrepancy between the amount secured $4400, and the value of the property mortgaged, which was inventoried at $18,000, as shows it to be fraudulent. Such a discrepancy is sometimes said to be a badge of fraud as in section 58 Bump on Fraudulent Conveyances (4th ed.) We have however examined all the cases referred to by Bump in this contention (note 5) and in no one of them is it held that such a discrepancy is of itself conclusive evidence of fraud. In each of these cases there were other circumstances tending to establish fraud independent of the question of the excessive security. In the case of Downs v. Kissman, 10 Howard 102, the Supreme Court of the United States held that "it is no badge of fraud for a mortgage, which is a mere security, to cover more property than will secure the debt due. Any creditor may

pay the mortgage debt and proceed against the property; or he may subject it to the payment of his debt by other modes of proceeding." This doctrine was applied in the case of Davis v. Schwartz, 155 U. S. 631, text 641, 15 Sup. Ct. Rep. 237, and also in the cases of First Nat. Bank v. North, 2 South Dak. 480, text 494, 51 N. W. Rep. 96; Black Hills Mercantile Co. v. Gardiner, 5 South Dak. 246, text 247, 58 N. W. Rep. 557; Clements v. Hartzell, 57 Kan. 482, 46 Pac. Rep. 961. In the case of Black Hills Mercantile Co. v. Gardiner, *supra,* a debt of $1700 was secured by a mortgage on a stock of goods worth $10,000, and it was held that this circumstance alone was not any evidence of a fraudulent intent; that defendants had a right to give a mortgage to reasonably secure their indebtedness to the bank, and that it would have been impracticable to give it on an undivided portion of the stock, and equally so on certain enumerated articles.

If the facts of this case required it we might be expected to extend this investigation to the question whether the giving of the mortgage to the bank was not such a preference of the bank as would make the mortgage void under the assignment laws of this State (Sec. 2307 *et seq.* R. S. 1892) and in such an investigation the first proposition involved would be whether these laws apply to a married woman at all, who is not *sui juris* and who can make no transfer, conveyance or encumbrance of her separate statutory property without the consent and joinder of her husband in such transfer or conveyance. But we do not think the facts of this case require such an inquiry. There is no proof here that when the mortgage was executed to the bank Mrs. MacDonald was insolvent. The fact of her insolvency was alleged in the bill and denied in the answer. It was, therefore, necessary for the complainant to show by

some evidence the fact of the insolvency. On the contrary there is some proof that at the time she was not insolvent. We are not informed as to how much property Mrs. MacDonald then owed or of its value, nor are we informed as to the extent of her indebtedness, nor as to how much of such indebtedness could, under the constitution, be made a charge upon her separate property involved herein. The transaction between herself and husband and the bank appears to have been absolutely bona fide upon a valuable consideration, and free from fraud. Under these circumstances we are of opinion that the Chancellor erred in his orders enjoining the foreclosure suit of the Mercantile Exchange Bank and appointing the Receiver of the mortgaged property, and also in his final decree wherein the equities are found to be with the complainants Aitken, Son & Company. Of course the Mercantile Exchange bank, having taken possession of the mortgaged property under the terms of the mortgage, and having proceeded to sell and dispose of the same, would be liable to account to Mrs. MacDonald and such of her creditors as have liens on said property adjudged to be such by a court of equity in the exercise of the power conferred on it by the second section of Article 11 of the Constitution of 1885, for the proceeds of the mortgaged property over and above the debt due the bank which has priority, and the reasonable costs, expenses and attorneys and solicitors fees incurred by it, in disposing of the property and in defending and foreclosing the mortgage. What particular items or how much should be allowed the bank for such costs and attorneys' fees are matters which cannot be adjudicated in this suit, but fall properly to be settled in the foreclosure suit of the Mercantile Exchange Bank. The decree and order

appealed from are reversed at the cost of the appellees
with directions that such further proceedings be had as
may be consistent with the law and this opinion.

TAYLOR and PARKHILL, JJ., concur.

SHACKLEFORD, C. J., COCKRELL and WHITFIELD, JJ.,
concur in the opinion.