No. 32,096

CHARLES W. JOHNSON, Receiver of the State Bank of Sylvia, *Appellant*, v. RUTH THOMPSON, GEORGE THOMPSON and MRS. GEORGE THOMPSON, His Wife, *Appellees*.

(45 P. 2d 886)

Opinion filed June 8, 1935.

*Charles Hall, C. E. Branine* and *H. R. Branine,* all of Hutchinson, for the appellant.

*C. M. Williams, D. C. Martindell* and *W. D. P. Carey,* all of Hutchinson, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action to set aside a deed given by one of the two defendants to the other and have the lien of a judgment held by the plaintiff against the first-named defendant,

the grantor in the deed, adjudged superior to the rights of the grantee in the deed.

The plaintiff, the receiver of the State Bank of Sylvia, Kan., in his petition alleges collusion and conspiracy between the defendants Ruth Thompson and her brother-in-law, George Thompson, to delay and hinder the plaintiff in the recovery of a judgment against Ruth Thompson, by her filing false and fraudulent verified answers and procuring continuances in an action against her on notes, and in the meantime conveying to George Thompson the real property involved.

The defendants filed separate answers denying the allegations of the petition and alleging indebtedness of Ruth Thompson to George Thompson, for which the deed was given.

After hearing the evidence the trial court filed the following decision:

"This action is brought to set aside a deed given by defendant, Ruth Thompson, to her brother-in-law, George Thompson, in the face of a suit pending by the plaintiff herein against Ruth Thompson on certain promissory notes, . . . the deed in question having been given at a term prior to the term at which judgment against Ruth Thompson was rendered, so that the judgment did not attach as a lien upon the real estate.

"The court has given the evidence in this case very careful consideration, yet he is of the opinion that Ruth Thompson, being indebted to her brother-in-law for some $2,900 for work and labor performed in farming the land in question, made the deed conveying the land to him in satisfaction of such debt and not for the purpose of defrauding the plaintiff herein. The conveyance was made for the purpose of paying the debt, and while Ruth Thompson did prefer her brother-in-law to her creditors, especially the receiver of the failed bank, and she probably intended that it should, yet the conveyance does not violate the rule of adequate consideration and good faith.

"Judgment will be rendered for the defendants accordingly on January 20, 1934."

Subsequently the trial judge filed a supplemental decision striking out one clause in the former decision (which is eliminated from the above copy), and adding some details. Judgment was rendered for defendants, from which the plaintiff appeals.

The appellant states the question involved in the following language:

"The question involved in this appeal is whether an insolvent debtor, by fraudulent and wrongful acts and means, may delay one creditor in obtaining a judgment to which such creditor is entitled in a suit pending, and meanwhile make a valid transfer of the debtor's property to another creditor so as to give such other creditor a preference."

Appellant's counsel, with eminent fairness and candor, admit certain limitations and restrictions in this appeal. One is concerning the finding by the trial court of a *bona fide* indebtedness of Ruth Thompson to George Thompson at the time she made the conveyance to him, and counsel then state that "the question as to the existence of such indebtedness is not raised in this appeal."

Concerning the privilege of the debtor to give a preference to one creditor over another, counsel for appellant say such general rule is not disputed, but they contend that the facts in the case at bar are such that the general rule does not apply. Counsel for appellant further state that they realize the trial court's findings are conclusive on disputed questions of fact, but they rely only upon the facts which are established by undisputed evidence to reverse the judgment of the trial court.

Appellant devotes several pages of his printed brief to a summarizing of this undisputed evidence and a history of the case, and we are at once met with a serious difficulty in classifying the filing of false answers, knowing them to be false, with undisputed evidence. The same with there being no good faith in filing an amended answer. Is an answer to be denominated false and fraudulent, even if verified, when the defendant loses his case in court? Is the lack of good faith to be an undisputed fact when, after argument, an amended answer is desired to be filed because of an insufficiency in the former answer? Are former answers to be classed as false and fraudulent when the defendant fails to further answer after an amended petition is filed setting out a definite and specific consideration not contained in the original petition? The real history of the case we think is undisputed. The first action was a suit on two notes, one for $2,000 and the other for $281. The husband of Ruth Thompson at the time of his death in 1929 was indebted to the plaintiff bank in the sum of $2,925, on notes signed by him and not by his wife. After his death she signed notes covering his indebtedness to the bank upon an agreement (as stated in the amended petition) that the bank would not cause an administration of the husband's estate. She also borrowed several small sums herself from the bank after her husband's death. These notes were renewed several times and on August 1, 1931, they all together amounted to $4,581. A second mortgage was given by her to the bank on a two-hundred-acre farm to secure one note for $2,300. The other two notes, amounting to $2,281, were the ones on which the action

was commenced. These two notes became due November 1, 1931, and the bank refused to renew them.

In December, 1931, Ruth Thompson and George Thompson went to consult an attorney about her giving him a deed to her half interest in the 140-acre tract belonging to her husband at the time of his death. They saw the attorney again in February, 1932.

The action was commenced by the bank against Ruth Thompson on these two notes on April 2, 1932. The April term of court in Reno county began on April 4, 1932. The plaintiff was anxious to procure a judgment at the April term of court so that the lien thereof would date back to the first day of that term. On April 27, 1932, the defendant filed her first answer to the plaintiff's petition. It was verified by her before a notary on April 25, 1932. On the same day she executed the deed to George Thompson to her half interest in the 140-acre tract. On May 14, 1932, the trial court heard the motion of the plaintiff for judgment on the pleadings, and after argument the defendant asked and was given leave to file an amended answer instanter. It was also verified and alleged that the indebtedness represented by the notes on which suit was brought was that of her deceased husband and not her indebtedness and there was no consideration for her signing these notes. On May 21, 1932, another motion of plaintiff for judgment on the pleadings was heard by the court, and during the argument thereon the defendant was given leave to file instanter a second amended answer alleging there was no consideration whatever for the signing of the notes by her. This answer was verified and filed on May 23, 1932. On the same day the deed to George Thompson was acknowledged before a notary. The last-amended answer raised a jury issue, and it was then too late to have a jury trial at the April term.

On June 1, 1932, the plaintiff filed an amended petition setting up as a consideration for the defendant giving the notes an agreement of the defendant to pay the indebtedness of her husband if plaintiff would not require an administration of the estate of her husband. No answer was filed to this amended petition, and the case was passed on the first day of the September term, 1932, to October 19, 1932, at which time the defendant did not appear in person or by attorney, and judgment was rendered against her on the two notes. Execution was issued on November 1, 1932, and the deed to George Thompson was recorded on November 3, 1932. Ruth Thompson had no property except that which she received from her husband's estate.

In the case at bar the attorney for Ruth Thompson in the former case testified that the filing of the amended petition gave him his first knowledge as to a consideration for the notes being a promise not to cause administration of the estate.

Appellant calls attention to several coincidences as to dates or approximate dates: First, when renewal of the notes was refused by the bank on November 1, 1931, and Ruth Thompson and George Thompson interviewed an attorney in December, 1931, about Ruth Thompson's giving a deed to George Thompson of her interest in the 140-acre tract; second, the deed was dated the same day the first answer was verified, viz., April 25, 1932; third, the deed was acknowledged the same day the first amended answer was verified, viz., on May 23, 1932; and fourth, the execution on that judgment was issued on November 1, 1932, and the deed was filed for record on November 3, 1932. From these coincidences the plaintiff reasons that the acts of the defendants in this action were prompted by the progress of the suit on the notes, and their acts with reference to the deed were made necessary by the progress in the suit, to prevent the plaintiff from getting a lien on this land. This reasoning is logical, but we cannot say that it leads to the necessary conclusion of willful and intentional fraud any more or as much, as in many cases, where the deed is made to all the property before the remaining creditors have any suspicion of insolvency.

Appellant further argues that the frequent delays caused by the filing of so many answers and the other conduct of the defendant in court were with the design of keeping the plaintiff from getting a judgment at the April term of court so as to have its lien date from the first day of the term. What was done in this regard, and when such things were done, are undisputed features of the evidence, but the design and purpose of doing so in order to make the procuring of such delay fraudulent must be inferred from such facts and the surrounding circumstances. The trial court saw and heard the witnesses relating these surrounding circumstances and was in a much better position than we are to reach a conclusion as to a wrongful or fraudulent purpose intended, although in some cases we might conclude the trial court had overlooked the serious importance of some such features.

It is very evident from the pleadings in the first case that both parties were not applying the comprehensive term, consideration, to the same actual fact until the amended petition was filed, which al-

leged as a consideration an agreement of the plaintiff not to begin administration proceedings on the husband's estate. Defendant's answers show definitely that she was regarding it as an indebtedness of her deceased husband and was denying having received any consideration for signing these two notes, which were for several hundred dollars less than the indebtedness of her husband to the bank at the time of his death. This conclusion, based upon the pleadings alone, is strengthened by the evidence of the defendant and her attorney in the case at bar.

Of course, a consideration of any kind is a sufficient consideration, but before a denial of consideration can well be said to be false and intentionally fraudulent the denial should be of the particular fact or feature of the case constituting the consideration. Appellant cites an appropriate text from 27 C. J. 634:

"The fact that the transfer is made by an insolvent debtor on the eve of rendition of judgments against him is at most a badge of fraud; and when it appears that the transfer is a sale to a creditor in payment of a debt admitted to be justly due, and for a full and fair price, and that the debt is hereby discharged, all presumption of fraud arising from the pendency of suit is removed. On the other hand the right of plaintiff in an action to enter and have the benefit of a judgment will be protected by the courts against the actual fraud of defendant debtor, as where the latter by false promises and assurance or ungrounded opposition obtains delay in the proceedings and meanwhile transfers his property or confesses judgment in favor of another creditor; in such a case the plaintiff's judgment will be given priority."

Appellant cites several cases from Kansas and other states along the same line.

We are unable to see actual fraud in the answers, in the delays obtained, in the execution of the deed or in the several coincidences pointed out. Nor are we able to find enough undisputed evidence on which to base a finding of fraud or fraudulent intention on the part of the defendants or either of them.

Appellant in his brief admits that if the deed had been executed and delivered in December or February when defendants went to see an attorney about executing such an instrument, and before the commencement of the suit, then the general rule permitting a debtor to prefer a creditor would have applied, but she was not entitled to such a privilege after suit had been commenced and plaintiff claimed to be entitled to have a lien going back to the first day of the April term.

R. S. 60-3126 authorizes the lien of the judgment obtained in district court to attach from the first day of the term it is obtained

when the suit was filed before the commencement of the term. But nothing in that section makes it apply to land already conveyed when judgment is rendered at a succeeding term of court. The two sections of 27 C. J. preceding the one above cited, being sections 393 and 394 on pages 633 and 634, are pertinent and are as follows:

"Except where in connection with other circumstances they tend to taint the transaction with fraud, secrecy and haste in effectuating a preference constitute no evidence of fraud, for the debtor has a legal right to give the preference and the creditor has an equal right to use influence to obtain it and to be secretive and energetic in order that other creditors may not forestall him. Nor is fraud shown by the debtor's failure to disclose to his other creditors the existence of the preferred debt or of the preferential agreement. Indeed it seems that secrecy and haste which would be sufficient to show fraud in a sale of property for a money consideration will not avail to impeach a transfer in satisfaction of an antecedent debt.

"A preference is not rendered fraudulent by the fact that it is made during the pendency of an action by another creditor against the debtor. The fact that the preference is made by an insolvent debtor pending bankruptcy proceedings against him and in violation of the bankruptcy act does not affect its validity under the laws of the state."

It is also urged that defendant George Thompson should have recorded his deed as soon as he received it, and his failure to do so was an evidence of fraud. In the case of *National Bank v. Naill*, 52 Kan. 211, 34 Pac. 797, it was said:

"A bank having a claim against an insolvent firm, which is consulted by a firm or other creditors with reference to collecting and securing their claim, is not legally bound to disclose the existence of its claim to such firm, but may keep silent and protect its own interest, provided it is guilty of no fraudulent conduct, and does nothing more than is necessary to its own protection." (Syl. ¶ 2.)

In *Clement v. Hartzell*, 57 Kan. 482, 46 Pac. 961, it was said, after stating the right of one creditor to obtain a preference if he can do so fairly, that—

". . . unless such preferred creditor stands in some relation of confidence to the others he is under no obligation to disclose to them what he has done, or what he intends to do, to protect his own interest." (Syl. ¶ 3.)

Appellant cites *Beekman v. Trower*, 82 Kan. 327, 108 Pac. 110, where in a petition to vacate and set aside a judgment rendered against a codefendant who was a lienholder, it was alleged, as it is here, that the answer in the former case was false and known by defendants to be false at the time they filed it, and the demurrer to that petition was held to have been properly overruled. On the hearing of the demurrer to the petition the allegations therein are

taken to be true, but we have gone one step further here and plaintiff is confronted with the difficulties of proving those allegations. The trial court hearing all the evidence found fraud had not been established thereby, and on appeal to this court as to such matters as this court can properly review in a case of this kind we reach the same conclusion.

The judgment is affirmed.